379 F.2d 400
 Mrs. Bettie Hallie Stirling ROECKER, Individually and as
Administratrix of the Estate of Samuel Carter
Stirling, Deceased and Mrs. Nola Chiles,
Appellants,
v.
UNITED STATES of America et al., Appellees.
 No. 21926.
 United States Court of Appeals Fifth Circuit.
 Jan. 5, 1967, Rehearing Denied July 3, 1967, en banc.
 
 Alfred N. Crisler, E. B. Todd, Jackson, Miss., Nola Chiles, in pro. per., W. E. Gore, Jr., Jackson, Miss., for appellants.
 B. Stirling Tighe, Robert E. Hauberg, U.S. Atty., Jackson, Miss., for appellees.
 Before BROWN, BURGER,* and WISDOM, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 These cases, consolidated in the District Court, seek to determine the lawful beneficiary of a $10,000 National Service Life Insurance policy on the life of the late S. Carter Stirling. One case is an interpleader action brought by the United States as the insurer. See 38 U.S.C. 784(a). The other is an action in the nature of a bill of review removed to the district court from the Chancery Court of the First Judicial District of Hinds County, Mississippi. We hold that the bill of review was improperly removed, and that the final determination of the interpleader action must await the outcome of the state proceedings on the bill of review.
 
 
 2
 A long, unedifying tale lies behind the twistings and turnings in this case. S. Carter Stirling, a bachelor in Jackson, Mississippi, for most of his life, made one short excursion into matrimony. In 1930 he married; in 1936 his wife divorced him, taking with her to California, a daughter, now Mrs. Bettie Stirling Roecker, one of the claimants in this case. After the divorce, Stirling turned to the company of a hometown widow, Mrs. Nola Chiles, another claimant here.
 
 
 3
 During World War II he served as an officer in the Navy, and while in the service in 1942 procured the policy here in question. He named his father, General J. B. Stirling, as beneficiary.
 
 
 4
 Stirling, a chronic alcoholic suffering from obesity and high blood pressure, had a series of strokes starting in AprilAugust 1947. By 1955 he was almost totally incapacitated. Meanwhile in 1950, his father, the named beneficiary of the insurance policy, died. Within three weeks Stirling changed the beneficiary of the insurance policy to his friend, Mrs. Chiles. In 1956, on the petition of Stirling's nephew, B. Stirling Tighe, an attorney, the Chancery Court of the First Judicial District of Hinds County (Jackson), Mississippi, declared Stirling non compos mentis, and appointed William S. Moore as his guardian. Mr. Tighe was and continued to be the guardian's attorney.
 
 
 5
 That was the picture before family legal maneuvers complicated the case. Less than three months after Stirling was declared incompetent, Mr. Tighe petitioned the chancery court to allow the guardian to change the beneficiary of the life insurance policy to the attorney's mother, Mrs. Hallie Stirling Tighe, S. Carter Stirling's sister, and to name the attorney and his sister as joint alternate beneficiaries. The petition recited that Mrs. Tighe was Stirling's next of kin, the natural object of the bounty of the insured. The chancellor (Judge Robertson) informed Mr. Tighe that he was not inclined to grant the change of beneficiary unless Mrs. Chiles, the designated beneficiary, had an opportunity to be heard. Mr. Tighe then advised the court that he would hold the matter in abeyance while he researched the question whether the beneficiary could be designated ex parte. The Administrator of Veterans Affairs, who was made respondent to the petition, filed an answer neither objecting nor waiving objection to the petition but pointing out that Mrs. Roecker rather than Mrs. Tighe was the insured's next of kin. At this point the guardian, through Mr. Tighe, filed an amended petition recognizing, for the first time, Mrs. Roecker's existence, but denying that she had a close relationship with her father and asserting that Mrs. Tighe had taken good care of the ward for years. The chancellor then advised Mr. Tighe that before he would change the beneficiary, he would want to hold a hearing for which both Mrs. Chiles and Mrs. Roecker should receive notice and an opportunity to be heard and represented. Mr. Tighe asked the court once again to hold the matter in abeyance.
 
 
 6
 About a year and a half later, in 1957, Mr. Tighe, by letter to Mrs. Roecker, offered to initiate proceedings to have the beneficiary of the policy changed to the ward's estate (of which Mrs. Roecker was the sole heir), if Mrs. Roecker would agree to assign a one-half interest in the estate to his mother. When she refused to agree, he proposed a fifty per cent fee contingent on his obtaining the court's permission to name the estate as the beneficiary. Although Mrs. Roecker never agreed to any of these arrangements, in May 1958 the guardian petitioned the chancery court for permission to designate the estate as beneficiary. The petition asked as well for a fifty per cent contingent fee 'to Tighe and Tighe, (the guardian's) * * * attorneys, for their services in instituting such action in his behalf.' (Apparently because the federal law, 38 U.S.C. 784(g), prohibits attorney fees of more than 10% Being taken out of the insurance proceeds, this petition requested that the fee be allowed out of the balance of the ward's estate.) The Administrator of Veterans Affairs waived any objection to the proposed change of beneficiary but asserted that any attorney's fees should be only nominal. Judge Robertson, after another conference with Mr. Tighe, granted the guardian permission to change the beneficiary to the estate, but reserved judgment on the fifty per cent fee, saying that it would be best to wait to see how much work was required.
 
 
 7
 Neither the guardian nor Mr. Tighe took any steps to make the authorized change. Instead, late in 1958, Mr. Tighe reactivated the original petition seeking to designate his mother as beneficiary. He consulted a newly appointed chancellor, Judge Summer, although Judge Robertson was available at the time. Judge Summer testified in this case that he did not recall Mr. Tighe's mentioning the prior proceedings to him; that had he known of Judge Robertson's connection with the case, he would have consulted him before taking any action; that he probably would have decided differently if all the facts had been shown as they were in the district court. Not knowing of the prior proceedings, Judge Summer held an ex parte hearing in December 1958 on the question of designating Mrs. Tighe as beneficiary. At the hearing, Mr. Tighe produced evidence tending to show that Mrs. Roecker had almost no contact with her father, that Stirling had been incompetent in 1950, and that Mrs. Tighe took kind and considerate care of her brother. No evidence to the contrary was presented, since the hearing was ex parte. Judge Summer found that Stirling had been incompetent in 1950, and that the best interest of the ward would be served by designation of Mrs. Tighe as beneficiary. December 19, 1958, Judge Summer entered a final decree granting the guardian's petition and order that the beneficiary be changed to Mrs. Tighe.
 
 
 8
 Two weeks later Carter Stirling died. Mrs. Tighe, Mrs. Chiles, and Mrs. Roecker all filed claims for the life insurance proceeds. Mrs. Tighe based her claim on the redesignation of beneficiary ordered by Judge Summer. Mrs. Chiles based her claim on the original redesignation by the insured in 1950. She argued that Stirling was competent at the time, and that the redesignation ordered by the court was null and void. Mrs. Roecker, while she agreed with Mrs. Chiles that the court-ordered redesignation should not be given effect, maintained that her father was incompetent in 1950 because of alcoholism, that his designation of Mrs. Chiles was therefore invalid, and that since the designated beneficiary, her grandfather, had predeceased the insured, the proceeds passed by law to his estate.
 
 
 9
 Upon receipt of the three conflicting claims, the United States brought the present interpleader action to determine which of the three claimants is entitled to the life insurance proceeds. While that action was pending in the district court, Mrs. Chiles and Mrs. Roecker, having learned of the court-ordered redesignation in favor of Mrs. Tighe, filed in the Chancery Court for the First Judicial District a bill in the nature of a bill of review.[1] They asked the court to set aside its former judgment on the ground, inter alia, that the judgment had been procured by the fraud of Mr. Tighe, the guardian's attorney. The fraud consisted, so the plaintiffs alleged, in Mr. Tighe's failure to inform the court of Mrs. Roecker's existence until forced to do so by the VA, his failure to notify Mrs. Chiles and Mrs. Roecker of the Hearing so that they could appear and present evidence, his failure to disclose to Judge Summer that Judge Robertson had previously refused to redesignate the beneficiary in favor of Mrs. Tighe in an ex parte proceeding, and his failure to present evidence to judge Summer which, according to the plaintiffs, was known to him and would have shown that Stirling was competent in 1950, and that there was a continuing love and affection between Mrs. Roecker and her father. Mrs. Tighe removed this action to the district court where it was consolidated with the interpleader action. Neither Mrs. Chiles nor Mrs. Roecker objected to the removal.
 
 
 10
 The case was tried without a jury. The district judge found that Stirling had been non compos mentis in 1950, and that his designation of Mrs. Chiles was therefore of no effect; that Judge Summer's ex parte redesignation in favor of Mrs. Tighe was proper; that Mrs. Roecker and Mrs. Chiles could not collaterally attack Judge Summer's decree in the federal court; and that there had been no fraud in the procurement of the redesignation. Accordingly, he awarded the proceeds of the policy to Mrs. Tighe. United States v. Tighe, S.D.Miss.1964, 229 F.Supp. 680. We affirm in part and in part vacate the judgment of the district court and remand for further proceedings.
 
 I.
 
 11
 The record contains a great deal of evidence relating to Stirling's mental condition in 1950. While the evidence is in conflict, we cannot say, after examining the voluminous record, that the district judge was clearly erroneous in finding Stirling incompetent as of May 1, 1950. We therefore affirm that part of the judgment denying the claim of Mrs. Chiles. This holding does not affect Mrs. Roecker and Mrs. Tighe. Their claims turn on the validity of the change of beneficiary ordered by the Hinds County Chancery Court in December 1958.
 
 II.
 
 12
 The construction of a life insurance policy issued by the United States, is, of course, governed by federal law. Wissner v. Wissner, 1950,338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424; Woodward v. United States, 8 Cir. 1948, 167 F.2d 774, rev'd on other grounds, 1951, 341 U.S. 112, 71 S.Ct. 605, 95 L.Ed. 806. The federal statute governing changes in the beneficiary of a NSLI policy is 38 U.S.C. 717:
 
 
 13
 (a) The insured shall have the right to designate the beneficiary or beneficiaries of insurance maturing on or after August 1, 1946, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries.
 
 The regulations provide:
 
 14
 The insured shall have the right at any time, and without the knowledge or consent of the beneficiary to cancel the beneficiary designation, or to change the beneficiary. * * * A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans' Administration by the insured or his agent, and must contain sufficient information to identify the insured. * * * 38 C.F.R. 8.47 (1966).
 
 
 15
 Mrs. Roecker argues that since the insured did not personally sign the notice of change, the change was invalid and should be given no effect. Her argument is without merit. The purpose of the statute was to confer on the insured plenary power to change the beneficiary of his policy. Wissner v. Wissner, supra. But the law does not provide for the eventuality that the veteran insured would become incompetent. We read the word 'competent' into the Act. Although the language of the regulation, read literally, requires the insured to sign the request for change of beneficiary, Congress and the VA surely did not mean to bind the United States to every whim of a lunatic. When it declared that the insured was to have the absolute right to change the beneficiary, Congress operated 'against the background * * * of (the) basic principle' in our jurisprudence[2] that an incompetent may not validly dispose of his property. See, e.g., 3 Pomeroy, Equity Jurisprudence 946 (5 ed. Symons 1941). Since it is evident, at least to this Court, that Congress did not intend such an anomalous result, we need not follow the strict language of the regulation. See Church of Holy Trinity v. United States, 1892, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; Murray v. United States, E.D.Mich.1950, 107 F.Supp. 290, aff'd, 6 Cir. 1951, 188 F.2d 362, cert. denied, 1951, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617. Mrs. Roecker's argument that the 1958 redesignation was invalid because it was not signed by the insured must fail.
 
 III.
 
 16
 The federal statute is silent as to the manner in which a guardian may change the beneficiary of an incompetent's insurance policy. The question arises, therefore, whether the court should incorporate state law to resolve that issue or fashion an independent federal doctrine as part of federal common law. See Mishkin, The Variousness of 'Federal Law': Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797, 811 (1957).[3] In exercising this judicial discretion in favor of state law, the federal court is not denying its competence to make an independent judgment, but is in fact making a choice clearly within its competence. 'In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.' Justice Jackson in D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 1942, 315 U.S. 447, 471, 62 S.Ct. 676, 686, 86 L.Ed. 956, 26 Minn.L.Rev. 899.
 
 
 17
 Many considerations bear on the decision whether to apply state law or to fashion federal law. For example, where the particular question under the federal act depends on a status traditionally governed by state law, the federal court may infer that Congress, legislating against this background of state law, intended that law to govern. See De Sylva v. Ballantine, 1956, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415. Similarly, where application of state law would not interfere with the federal program, but application of federal law would disrupt state agencies, state law should be applied, RFC v. Beaver County, 1946, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172. But where the state law conflicts with the federal statute, the state rule will not govern. Wissner v. Wissner. And, of course, the court will fashion federal law where nationwide uniformity is necessary to protect a federal program. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.
 
 
 18
 Each case must be decided on the basis of the statutory program involved and the precise question to which whatever law is chosen will be applied. See Mishkin, supra at 802-814. In this case, we conclude that state law should govern.
 
 
 19
 In Dyke v. Dyke, 6 Cir. 1955, 227 F.2d 461, cert. denied, 1956, 352 U.S. 850, 77 S.Ct. 70, 1 L.Ed.2d 61, the Court held that the mental competence of an insured veteran to change the beneficiary of his policy was to be decided by federal law. The veteran had been declared incompetent by a Tennessee state court. Following a period of confinement in a Veterans' Administration hospital, the veteran was released as competent. Thereafter he changed the beneficiary of his policy from his mother to his wife and child. Under Tennessee law, an adjudication of incompetence is conclusive of continued incompetence until removed by an adjudication of competence. A court had never declared the veteran competent. The federal court refused to apply the state law, and recognized the change of beneficiary. While there may be a sound basis for that decision,[4] the question was different from that presented in this case. There the problem was whether the insured's own change of beneficiary was valid. But here the question is not the insured's competence, but the propriety of a guardian's discharge of his duties to his ward. A federal court would not fashion a federal rule governing the appointment of guardians for incompetents. See Vestal & Foster, Implied Limitations on the Diversity Jurisdiction of Federal Courts, 41 Minn.L.Rev. 1, 36 (1956). It would be equally incongruous for a federal court to attempt to develop standards for the management of an incompetent's estate.
 
 
 20
 To apply state law to this question does not offend congressional policy. Here there is no overpowering reason in favor of a uniform rule of nationwide application. In fact to apply a federal standard would unnecessarily complicate the duties of guardians, who would have to adhere to one standard when dealing with most of a veteran's affairs, but to another when dealing with his government insurance policies. United States v. Murray, E.D.Mich.1950, 107 F.Supp. 290, aff'd, 6 Cir. 1951, 188 F.2d 362, cert. denied, 1951, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617, dealt with the propriety of a guardian's redesignation of the beneficiary of an incompetent veteran's NSLI policy. The court decided to apply state law. We think it was correct, and that Mississippi law should govern this case.
 
 IV.
 
 21
 The step which follows a conclusion that a question is to be governed by state law is the ascertainment of what the state law is. This is a particularly difficult task in the present case. There is no Mississippi case precisely in point other than the decision of the Hinds County Chancery Court in this case. It held, of course, that with the approval of a chancery court secured in an ex parte proceeding, a guardian may change the beneficary of an incompetent's life insurance policy from a beneficiary named by the insured to a collateral relative of the insured. There are arguments both for and against the wisdom of such a decision. As the parties conceded the standard by which the propriety of the guardian's action is to be measured is the 'best interest of the ward'. The argument advanced by Mrs. Tighe-- that whatever the ward would have done had he been competent is what is 'in his best interest'-- is speculative and tenuously subjective. On the other hand, a collateral relative may be that natural object of the ward's bounty in the factual context of a particular case. The procedural question is also open to debate. Even though the regulation allows a veteran to change the beneficiary of his policy without the former beneficiary's knowledge or consent, it does not necessarily follow that such a change may be made by a guardian after an ex parte proceeding in the chancery court. But see United States v. Murray. Different considerations may apply to the case in which the guardian seeks to change the beneficiary to the estate in an ex parte proceeding and that in which he seeks to designate a third person.[5] This seemed to be Judge Robertson's view in this case.
 
 
 22
 Had Judge Summer's decision been rendered in an unrelated case, this Court would certainly not be bound to follow it. Even where state law applies of its own force, as under Erie R.R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a federal court need not necessarily defer to state trial court decisions. King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608.[6] As in King, the Hinds County Chancery Court is not a court of statewide jurisdiction, as was the New Jersey chancery court in Fidelity Union Trust Co. v. Field, 1940,311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109. See Miss.Const. art. 6, 152, 164; Griffith, Mississippi Chancery Practice 85 (2 ed. 1950). Its decisions are not reported, and thus are not available for use as precedent by other courts throughout the state. In similar circumstances, the Supreme Court in King decided that the federal court need not follow the trial court decision. The parties in the federal court, it reasoned, should not be bound by a decision that is not necessarily the law of the state, especially when the decision, because it is unpublished, would be available only to a litigant financially able to research the records of each county court.
 
 
 23
 These factors are not present in this case. Where the state trial court decision was rendered in a controversy involving the same subject matter and the same interests of the same parties as are present in the federal proceedings, there is no danger that it does not represent the state law. Here, as to these parties, Judge Summer's decision is the state law of this case. And, since the same parties are involved, the fact that the decision was unreported loses its significance.
 
 
 24
 If there were no question of the validity of Judge Summer's decision, we would be bound to follow it. We would affirm the district court's result and award the insurance proceeds to Mrs. Tighe.
 
 V.
 
 25
 The solution is not simple as the statement of the hypothetical. There is a very serious question as to the validity of Judge Summer's decision. Mrs. Roecker and Mrs. Chiles, in their bill in the nature of a bill of review, charge that the decision was the result of fraud on the chancery court. Their allegations are not frivolous. Mrs. Tighe's attorney, they charge, withheld evidence from the court. According to the plaintiffs, he chose to bring his petition before a newly appointed judge and did not reveal that another more experienced judge had refused to take the action requested. This bill of review was removed from the state chancery court to the district court. The action was not within the original jurisdiction of the district court and should therefore have been remanded. American Fire & Casualty Ins. Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702.
 
 
 26
 The Judicial Code provides that a civil action may be removed from a state court to a federal district court when the case would have been within the federal court's original jurisdiction. 28 U.S.C. 1441(a). Original federal jurisdiction exists where there is diversity of citizenship, 28 U.S.C. 1332, where the matter in controversy 'arises under the Constitution, laws, or treaties of the United States', 28 U.S.C. 1331, or where jurisdiction is conferred by a special statute.
 
 
 27
 A. The record discloses that there was no diversity of citizenship in the removed case. At the time the pleading was filed, Mrs. Roecker, one of the plaintiffs, was a citizen of california. Mrs. Chiles, the other plaintiff, was a citizen of Mississippi. Mrs. Tighe, the defendant, was also a citizen of Mississippi. Complete diversity did not exist and hence the district court would not have had original jurisdiction of the case. Strawbridge v. Curtiss, 1806, 3 Cranch. 267, 2 L.Ed. 435.
 
 
 28
 Even though Mrs. Chiles has since moved to Texas, the case must be remanded. In order for a case to be removable on the ground of diversity, diversity must exist at the time the state action is commenced. Jackson v. Allen, 1889, 132 U.S. 27, 10 S.Ct. 9, 33 L.Ed. 249; 1A Moore, Federal Practice P0.161(1), at 528, P0.157(12), at 382.
 
 
 29
 B. The question whether a guardian's redesignation of a national Service Life Insurance beneficiary is valid is, in a sense, a federal question. It would not arise but for the federal statute. We have held, however, that state law is to govern the propriety of the guardian's action. The question is, therefore, whether a claim which depends on state law incorated into a federal statutory program 'arises under' the laws of the United States. The Supreme Court has answered this question in the negative. Shoshone Mining Co. v. Rutter, 1900, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864. There a federal statute expressly provided that 'adverse suits' 'may be determined by 'local customs or rules of miners in the several mining districts * * *. " 177 U.S. at 508, 20 S.Ct. at 727. Such suits, the Court reasoned, did not arise under the Constitution or laws of the United States. 'The recognition by Congress of local customs and statutory provisions as at times controlling the right of possession does not incorporate them into the body of Federal law.' Ibid. Therefore, 'in a given case the right of possession may not involve any question under the Constitution or laws of the United States, but simply a determination of local rules and customs, or state statutes, or even only a mere matter of fact.' Ibid. See also Gully v. First National Bank in Meridian, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194. While here the federal statute does not expressly command reference to state law, we have decided that state law governs the decision of the question before us. We fail to see any meaningful distinction. The reasoning of the Shoshone case leads to the conclusion that the propriety of the guardian's redesignation raises no federal question.
 
 
 30
 The question presented by the bill of review is even further removed from the federal statute involved. Precisely stated, it is whether the judgment of the Chancery Court of Hinds County was procured by fraud. Under Mississippi practice, the action in the nature of a bill of review is an original action. See Cole v. Miller, 1856, 32 Miss. 89, 101; Griffith, Mississippi Chancery Practice 635, at 695, 642 (2 ed. 1950). The only question presented is whether the decree is void. If the court finally determines that its decree was procured by fraud, it will set the decree aside and start afresh, as if the original proceedings had never taken place. Cf. Griffith, 635, at 696. The new decree will be based on new evidence introduced at a new hearing. The bill of review does not raise the question whether Mississippi law permits a redesignation such as Judge Summer ordered. The only question it raises is whether the chancery court was a victim of fraud. We cannot imagine a question more properly within the competence of the state court and the state court only. This could not conceivably be a federal question. It could not possibly be the basis for removal.
 
 
 31
 C. When 'two distinct grounds in support of a single cause of action are alleged, only one of which presents a federal question,'[7] the entire case is within the original jurisdiction of the federal court. Thus the bill of review might fall within the jurisdiction of the district court and therefore by removable if it were, in effect, merely the statement of another, nonfederal, ground for the relief sought in the interpleader action. The question which the bill of review raises, however, is not the validity of the redesignation-- a question arguably before the federal court in the interpleader suit-- but the validity of the decree, a question not before the federal court. At this stage of the bill of review proceedings,[8] therefore, the case is not properly within the pendent jurisdiction of the district court. The bill of review was not removable as pendent to the interpleader action.
 
 
 32
 D. The bill of review is not within the original jurisdiction of the district court by reason of any of the special jurisdictional statutes.
 
 
 33
 Since the district court did not have original subject matter jurisdiction of the bill of review, that case must be remanded to the state court. American Fire & Casualty Ins. Co. v. Finn, supra.
 
 VI.
 
 34
 Since the validity of the state decision which controls this case is in question and is to be decided by the state courts, we think the best course of action would be for the district court to hold the interpleader action in abeyance until the validity of the state decree has been determined. If the state court upholds the validity of the decree, the district court should grant judgment for Mrs. Tighe. If the state court vacates its decree and proceeds to a redetermination of the merits, the district court should await the outcome of that action. As we noted at footnote 8, supra, we have not decided the removability of the bill of review action at this later stage of the proceedings.
 
 
 35
 The judgment of the district court is affirmed in part, and in part vacated. The case is remanded to the district court with directions.
 
 
 
 *
 Of the District of Columbia Circuit, sitting by designation
 
 
 [1]
 See Griffith, Mississippi Chancery Practice 642 (2 ed. 1950)
 
 
 [2]
 Mishkin & Morris, On Law in Courts 343 (1965)
 
 
 [3]
 See also Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; Friendly, In Praise of Erie-And of the New Federal Common Law, 39 N.Y.U.L.Rev. 383 (1964); Morgan, The Future of a Federal Common Law, 14 Ala.L.Rev. 10 (1964); Note, The Competence of Federal Courts to Formulate Rules of Decision, 77 Harv.L.Rev. 1084 (1964); McKenna v. Wallis, 5 Cir. 1965, 344 F.2d 432 (dissent), rev. 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369; Wright, Federal Courts 60, pp. 213-218 (1963)
 
 
 [4]
 See Mishkin, The Variousness of 'Federal Law': Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797, 816-20 (1957)
 
 
 [5]
 For example, designation of the estate may make it easier for the guardian to obtain credit for the ward. Cf. Murray v. United States, supra, 107 F.Supp., at 294
 
 
 [6]
 Note the distinction drawn between this situation and the Erie situation in Mishkin, supra note 3, at 802-810
 
 
 [7]
 Hurn v. Oursler, 1933, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148, 1154
 
 
 [8]
 We do not decide whether the case would come within the original jurisdiction of the district court if the state court should conclude that the decree was procured by fraud and proceed to a redetermination of the question of Mississippi law presented