Edwin **GRUNER**

v.

Janet L. **BLAKEMAN**, Florence R. Lauck, June L. Elzay, Joan L. Conroy and Litchfield Fabrics, Inc.

Civ. No. H–81–342.

United States District Court, D. Connecticut.

June 19, 1981.

Ralph C. Dixon, Scott P. Moser, Richard M. Reynolds, Day, Berry & Howard, Armand A. Korzenik, Hartford, Conn., for plaintiff.

Thomas C. Morrison, Christopher C. Angell, Patterson, Belknap, Webb & Tyler, New York City, and James W. Bergenn, Shipman & Goodwin, Hartford, Conn., for defendants Janet L. Blakeman, Florence P. Lauck & June L. Elzay.

Mark I. Fishman, Bridgeport, Conn., for defendant Joan L. Conroy.

### RULING ON PLAINTIFF'S MOTION TO REMAND AND ON DEFENDANTS' MOTION TO TRANSFER

CLARIE, Chief Judge.

The plaintiff has moved to remand this case to the state court on the grounds that

the removal was untimely and that requisite diversity of citizenship does not exist. Three of the defendants oppose such action, and have moved for an order transferring the case to the Eastern District of New York on the grounds that the action could have been brought there in the first place and that the interest of justice and the convenience of the parties would be best served thereby. The Court finds merit in the plaintiff's claim that the removal was untimely, and the motion to remand is granted. The contra-motion to transfer is, accordingly, denied.

### Facts

Litchfield Fabrics, Inc. ("the Corporation") is a Connecticut corporation, having its home office and manufacturing plant in the Borough of Bantam, in the Town of Litchfield, while its executive office and its sales headquarters are in New York City. The plaintiff, Edwin Gruner, is the plant manager of the Corporation, and is the record owner of 18% of its outstanding stock. The remaining 82% of the stock was owned by Louis F. Lauck until his death in October of 1980. Mr. Lauck was also the Chairman of the Board, Treasurer, and Chief Executive Officer of the Corporation. The plaintiff contends that according to the bylaws of the Corporation, he had a preemptive right to buy Mr. Lauck's stock in the Corporation at book value. Mr. Lauck's Will, however, purportedly directs that his stock in the Corporation be allocated to his three daughters, Janet L. Blakeman, June L. Elzay, and Joan L. Conroy, all of whom are named as defendants in this action.[1]

The underlying conflict between the bylaws and the Will was brought to the fore at a stockholders' meeting that took place on January 12, 1981, in Bantam. At that meeting Mrs. Blakeman, Mrs. Elzay, and Mrs. Conroy were named as the Board of Directors, and the bylaws were allegedly amended so as to destroy the plaintiff's preemptive right to purchase Mr. Lauck's stock. These actions were taken, the plaintiff claims, through the concerted efforts of Mrs. Blakeman and Mrs. Elzay. He asserts that Mrs. Conroy, whose husband William was at the time President of the Corporation, objected to her sisters' conduct and refused to sign the minutes of the meeting when Mrs. Blakeman asked her to do so.

Subsequently, on January 21, 1981, the newly constituted Board of Directors met and elected new corporate officers.[2] At a second meeting of the Board on February 13, 1981, Mr. Conroy was removed from the presidency and fired for disobedience and disloyalty. Mrs. Conroy appears to have taken no part in either of these meetings and to have disapproved of the actions taken at both of them.

When Mr. Conroy refused to acknowledge the legitimacy of the actions taken by Mrs. Blakeman and Mrs. Elzay in their capacity as a quorum of the Board, Mrs. Blakeman, as executrix of her father's Will, filed an application in the Surrogate's Court that had admitted the Will to probate. Said application requested the court to compel Mr. Conroy to turn over the management of the Corporation to the newly constituted Board. The application was brought on February 17, 1981, and was amended and supplemented on February 24, 1981.[3]

On February 25, 1981, Surrogate Judge Radigan ordered Mr. Conroy to give Mrs. Blakeman access to the books of the Corpo-

---

1. The Will was admitted to probate by the Surrogate's Court of Nassau County, New York. Mrs. Blakeman and Florence R. Lauck, who is Mr. Lauck's widow, were named as executrices of the estate. Because of her poor health, Mrs. Lauck has not taken an active role in the administration of the estate.

2. Mrs. Blakeman was elected Chairman of the Board and Treasurer. Mr. Conroy was reelected as President. Mrs. Elzay was elected Vice-President and Secretary.

3. The amendment to the initial application added the Corporation as a person interested in the proceeding. The supplemental application sought to have the Surrogate's Court determine the merit of Gruner's claimed right to buy Lauck's stock at book value. The court treated the supplemental application as a separate case; hence the reference to cases in Surrogate's Court in this opinion.

ration, and on March 9, 1981, Judge Radigan temporarily restrained Mr. Conroy from withdrawing any funds from the Corporation and from causing any employee of the Corporation to make payments to him. This latter action was in response to the payment of almost two hundred thousand dollars of Corporate funds to Conroy earlier that month, as partial salary and bonus for the fiscal year ending October 31, 1980, a payment that did not conform to the dispersal procedures mandated by the newly constituted Board. Mr. Conroy was also ordered to place the sum he had received in an escrow account.

Meanwhile, on March 4, 1980, Mrs. Blakeman and Mrs. Elzay, in their capacity as Directors of the Corporation, brought an action against Mr. Conroy in the New York State Supreme Court. In that action they sought to compel Conroy to account for the alleged losses said to have resulted from his purported malfeasance and waste of corporate assets, to require him to deliver the corporate records to the newly constituted Board, and to cease interfering with their management of the Corporation.

On March 17, 1981, both the actions in Surrogate's Court and the action in the State Supreme Court were removed to the Federal Court for the Eastern District of New York. On April 9, 1981, Judge Nickerson, to whom the case had been assigned, preliminarily enjoined Mr. Conroy from having checks drawn on the Corporation's account for his benefit, and continued in effect Judge Radigan's escrow order. Subsequently, on April 21, 1981, Judge Nickerson issued a memorandum and order, 512 F.Supp. 325, in which he denied Mrs. Blakeman's motions to remand the case to the state courts. The Judge also denied Mr. Gruner's motion to dismiss or to stay the cases that had been removed from Surrogate's Court.

While the litigation just described was making its way through the New York courts, Mr. Gruner began this action in the Superior Court for the Judicial District of Litchfield, at Litchfield, Connecticut. In this action he named Mrs. Blakeman, Mrs.

Lauck, Mrs. Elzay, Mrs. Conroy, and Litchfield Fabrics as defendants. He sought, in the first count, specific performance of the provision of the Corporation's bylaw, that allegedly gives him a right to purchase Mr. Lauck's stock; in the second count, determination of the validity of the actions taken at the stockholders' meeting on January 12, 1981; and, in the third count, which is in the nature of a stockholder's derivative action, payment to the Corporation from the estate of Mr. Lauck of sums that the latter allegedly diverted to his own use from the Corporation's assets during the last five years of his life. As part of his complaint, Gruner sought injunctive relief, and on the day the complaint was filed, Judge Walter M. Pickett, Jr. temporarily enjoined Mrs. Blakeman, Mrs. Elzay, and Mrs. Conroy from interfering with the management of the Corporation under claim of authority, as directors or officers until further order of the court. On May 18, 1981, Mrs. Blakeman, Mrs. Lauck, and Mrs. Elzay petitioned this Court to remove this case from the Superior Court to this Court, premising their petition on the diversity of citizenship that allegedly exists between the real parties in interest in this case, once those parties were properly aligned.

### Discussion of Law

The removal of cases from state court to federal court is controlled by 28 U.S.C. § 1441 *et seq.* Section 1441 provides in part:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of

the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Since this case is not "founded on a claim or right arising under the Constitution, treaties or laws of the United States," it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen" of Connecticut. The plaintiff alleges in his motion for remand that two of the defendants are citizens of Connecticut, thereby prohibiting removal.[4] The defendants claim that one of those two defendants, (the Corporation), is not a real party in interest in this case, and that the other defendant, (Mrs. Conroy) should be aligned with the plaintiff, thereby making the case removable.

Before the Court can address that dispute, however, it must address a prior procedural question: namely, whether or not the removal was timely. Section 1446(b) provides that:

"(b) The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

It is uncontested that the petition for removal in this case was filed considerably more than thirty days after service of the complaint. The action was commenced in state court on March 9, 1981, and the removal papers were not filed with this Court until May 18, 1981, some seventy days after service of the complaint. The defendants claim, however, that this case is controlled by the second paragraph of Section 1446(b), which deals with situations justifying delayed removal. In support of this claim they represent that while the case stated by the initial pleading was not removable, in that the requisite diversity of citizenship appeared not to exist, the subsequent ruling by Judge Nickerson in the New York cases has now made it clear that diversity of citizenship does exist. Therefore, the defendants claim, the thirty day period of Section 1446(b) should be calculated from the date on which Judge Nickerson filed the order in question, inasmuch as that order is the "order or other paper from which it first may be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). Since Judge Nickerson's order was filed on April 21, 1981, and the defendant's petition for removal was filed twenty-seven days later on May 18, 1981, the defendants claim that the removal was timely.

The plaintiff, on the other hand, contends that Judge Nickerson's ruling to the effect that the Corporation was not a party in interest in the New York cases is readily distinguishable from the facts presented by this case.[5] Fundamentally, however, the

4. Mrs. Conroy and the Corporation are named as defendants in Gruner's complaint along with Mrs. Blakeman, Mrs. Elzay, and Mrs. Lauck. It is only the latter three who petitioned for the removal of the case to this Court. Accordingly, when in this ruling the Court speaks of "the defendants," it is only the three defendants who petitioned for removal that are meant.

5. Judge Nickerson's ruling was addressed to Mrs. Blakeman's motion to remand. She had based her motion in part on the claim that the Corporation was an indispensable party that should be aligned with her both in the cases that came from Surrogate's Court and in the case that came from the State Supreme Court. Since the action Gruner brought in the courts of this state is not a probate case, Judge Nickerson's ruling on the role the Corporation has in the New York probate case is not directly relevant to a determination of its role in this case. Similarly since Gruner's action involved

plaintiff argues that under Section 1446(b) a ruling in another case cannot justify the delayed removal of this case.

■ There are two different contexts in which delayed removal is permissible. In one, the plaintiff, after commencing suit in state court, takes some action that makes a previously unremovable case removable. In the other, the initial pleading is incomplete in a way that conceals its removability, but the process of the litigation reveals its removability. *Compare*, for example, *Warren Brothers Co. v. Community Building Corp.*, 386 F.Supp. 656 (M.D.N.C.1974) with *Gilardi v. Atchison, T. & S.F.R. Co.*, 189 F.Supp. 82 (N.D.Ill.1960). In either case the defendant may petition for removal within thirty days of the date on which he receives "a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

The defendants allege that this case belongs to the second category of cases; its removability, they argue, was concealed when the initial pleading was filed, and was revealed only when Judge Nickerson issued his ruling of April 21, 1981, declaring the Corporation not a party of interest in the New York cases.

The fatal flaw in the defendants' argument is that it treats Judge Nickerson's order as if it were somehow part of this case. They defend their treating it in this way by saying that the New York cases and this case involve mostly the same parties and concern the same issue; namely, who currently has the right to the late Mr. Lauck's stock and thereby to the control of the Corporation. But the mere fact that this case and the New York cases are relat-

ed, both as regards parties and as regards issues, does not convert Judge Nickerson's order in the New York cases into an order or other paper in this case, and the case law makes it clear that the reference to orders or other papers in Section 1446(b) "relates only to papers filed in the action itself which alter or clarify the stated claim so as to reveal for the first time that a federal cause of action is stated . . . ." *Avco Corporation (Lycoming Div.) v. Local 1010 of the International Union (UAW AFL–CIO)*, 287 F.Supp. 132, 133 (D.C.Conn.1968).

The defendants seek to distinguish *Avco Corporation* from this case in the following way: in that case, they claim, the party seeking delayed removal sought to justify the delay by reference to a decision "in a wholly unrelated case." *Id.*, at 133. In this case, they claim, the ruling which allegedly justifies their delay was made in a case intimately related to the one they seek to remove. This difference, they say, makes this case distinguishable from *Avco Corporation*.

In considering this argument it must be noted in the first place that the two cases involved in *Avco Corporation* were not as unrelated as the language used in Judge Timbers' opinion to describe them would make them appear. In that case, the defendant labor union sought delayed removal after the Supreme Court, in a case that involved Avco Corporation and another union, which like the defendant was engaged in a labor dispute with Avco, ruled that litigation arising out of the labor dispute was removable. Thus in *Avco Corporation* the plaintiff in the case the defendant sought to rely on to justify the delayed removal was identical with the plaintiff in

a stockholder's derivative claim against the Corporation and a majority of its newly constituted Board, it is also distinguishable from the action that was removed to Judge Nickerson's court from the New York State Supreme Court. In the course of his ruling on the removability of that case, Judge Nickerson distinguished it from a stockholder's derivative suit, pointing out that the case before him had been brought under the provisions of New York law that allow an officer or director of a corporation to

bring an action against another officer or director to compel him or her to account for an alleged failure to perform management duties properly. Thus, Gruner's complaint is sufficiently different from the complaints at issue in Judge Nickerson's ruling to make his ruling nondispositive of the removability question at issue here, even if it were permissible for the Court to refer to his ruling in deciding that question.

the case in which removal was sought; the defendants in the two cases, while not identical, were both labor unions; and the underlying legal question—*viz.*, the removability of actions that implicate the National Labor Relations Act—was the same. Despite these similarities Judge Timbers held that the Supreme Court's ruling in the case on which the defendants relied did not justify delayed removal. He did this because he understood the second paragraph of Section 1446(b) to relate "only to papers filed in the action itself." 287 F.Supp. at 133.

Thus, even if the two cases at issue in *Avco Corporation* had been more closely related than in fact they were, the result would have been the same. The Court need not determine just how similar this case is to the New York cases on the removability of which Judge Nickerson has ruled. It is sufficient that since the filing of the present case in state court no action has been taken *in this case* that would reveal a hitherto concealed basis for removal and that would thereby justify delayed removal. For that reason, the petition for removal was untimely and the motion to remand must be granted.

Because the petition for removal was not filed in a timely fashion and because nothing appears in this case that would justify a delayed petition for removal, the plaintiff's motion to remand is granted. The defendants' motion to transfer the case to the Eastern District of New York is, accordingly, denied.[6]

SO ORDERED.

---

**6.** The Court recognizes that it would be more efficient if this case could be consolidated with the New York cases currently before Judge Nickerson. For the reasons stated in this ruling, however, the Court is convinced that it is not statutorily empowered to take jurisdiction over this case even for the sole purpose of transferring it to the Eastern District of New York.