**PEPSICO, INC., and Pepsi–Cola Metropolitan Bottling Co., Inc., Pepsi–Cola Bottling Co., Inc. of Indianapolis, Indiana, National Beverages, Inc., Pepsi–Cola Bottling Co. of Los Angeles, Beverage Products Corp., and Allegheny Pepsi–Cola Bottling Co., Plaintiffs,**

v.

**WENDY'S INTERNATIONAL, INC., Sisters International, Inc., and the Coca–Cola Company, Defendants.**

**No. 87 Civ. 0048 (PNL).**

United States District Court,
S.D. New York.

Dec. 9, 1987.

Cravath, Swaine & Moore, New York City (Ronald S. Rolfe, Louis M. Solomon, of counsel), for plaintiffs.

Fried, Frank, Harris, Shriver & Jacobson, New York City (Allen Kezsbom, Robert Gerber, Claire Hancock, of counsel), for defendants Wendy's Intern., Inc., and Sisters Intern., Inc.

Davis Polk & Wardwell, New York City (Robert F. Wise, Jr., Marilyn A. Klenk, of counsel), King & Spalding, Atlanta, Ga. (Joseph B. Haynes, Ralph A. Pitts, Daniel J. King, of counsel), for defendant The Coca–Cola Co.

Hughes Hubbard & Reed, New York City (James B. Kobak, Jr., of counsel), for putative plaintiff-intervenor Pepsi–Cola Allied Bottlers, Inc.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action for breach of contract, tortious inducement to breach and tortious interference with a contract. The plaintiffs are PepsiCo, Inc., and six of its bottling subsidiaries acting as representatives of

the class of all similarly situated Pepsi bottlers. The defendants are Wendy's International, Inc., Sisters International, Inc., and The Coca–Cola Company. The contract provided that Wendy's and Sisters would purchase beverages to be served in their restaurants from PepsiCo. The action was originally brought in New York Supreme Court. Defendants filed a petition removing the action to federal court, asserting that diversity jurisdiction was created on December 4, 1986, after the suit was instituted, when PepsiCo changed its state of incorporation from Delaware to North Carolina. Plaintiffs move to remand the action to New York Supreme Court.

## I. *Background*

On November 12, 1986, the plaintiffs filed suit in New York Supreme Court alleging that Wendy's and Sisters breached various contractual agreements binding them to serve Pepsi–Cola beverage products in their company owned stores; that Wendy's tortiously interfered with and induced the breach of contracts between the plaintiffs and franchisees of Wendy's and Sisters; and that Coca–Cola tortiously interfered with and induced the breach of the contracts.

At the time the action was begun in New York State Supreme Court, there was incomplete diversity between plaintiffs and defendants—plaintiff PepsiCo, as well as two of the defendants, Sisters and Coca–Cola, were incorporated in Delaware. On December 4, however, PepsiCo changed its incorporation from Delaware to North Carolina, thereby creating complete diversity. On December 24, an amended complaint was served adding 15 additional bottling company plaintiffs, two of which are incorporated in Georgia and are therefore nondiverse with defendant Coca–Cola, which has its principal place of business in Georgia.

On December 29, 1986, Pepsi–Cola Allied Bottlers, Inc. ("Pepsi–Allied") served a motion to intervene. Pepsi–Allied is a Delaware corporation, and is thus nondiverse with Sisters and Coca–Cola. Before the state court acted on the motion to intervene, on January 5, 1987 the defendants filed a removal petition with the Clerk of this court. The petition alleges that complete diversity was created by PepsiCo's transfer of its incorporation and that neither the purported amendment of the complaint adding Georgia plaintiffs nor the Pepsi–Allied motion to intervene had effectively added new parties.

Plaintiffs move to remand the action to state court. They contend that removal was improper because (1) there was not complete diversity at the time the action was commenced in state court; (2) the removal petition was not timely filed; (3) and there was not complete diversity at the time of the removal because (a) the amended complaint added two nondiverse parties and, (b) the putative intervenor is nondiverse.

## II. *Discussion*

### A. *Incomplete Diversity at Commencement of Action*

■ PepsiCo contends that removal was improper because there was not complete diversity at the time the suit was commenced. Plaintiff relies on the general rule where removal is premised on diversity jurisdiction, that complete diversity must exist both at the time the action is commenced *and* at the time of removal. *See Kinney v. Columbia Savings & Loan Assoc.,* 191 U.S. 78, 24 S.Ct. 30, 32, 48 L.Ed. 103 (1903); *Atlanta Shipping Corp. v. Internat'l Modular Housing, Inc.,* 547 F.Supp. 1356, 1360 (S.D.N.Y.1982); 14A C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d,* § 3273, at 312 (1985) (hereinafter *Wright & Miller*). The rule prevents a nondiverse defendant from manipulating the court's jurisdiction by changing its state of residence after the action is commenced and then seeking to remove based on the newly created diversity. *See Wright & Miller* § 3723, at 313–14.

The general rule, however, carries an exception. Section 1446(b), Title 28, U.S.C. provides:

[I]f the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant ... of a[ ] ...

paper from which it may first be ascertained that the case is one which is or has become removable.

In *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898), the Supreme Court ruled that where the *plaintiff* after instituting the action created complete diversity by voluntarily dismissing the action as to the nondiverse parties, removal became proper. This exception does not permit the defendant to manipulate removal jurisdiction since it is the plaintiff's act which creates diversity, while it is the defendant who seeks to take advantage of the newly created diversity jurisdiction. *See Wright & Miller* § 3723, at 314.

Few courts have considered whether the *Powers* exception extends to cases where diversity is created by a voluntary change of citizenship by the plaintiff. In *DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir.1979), the plaintiff moved during the course of the litigation from California to Utah. Her move created complete diversity, and the defendants thereafter removed the action. The Court found that removal was proper, noting that "the underlying policy problem is avoidance of manipulation," a concern which does not exist where the defendant removes on the basis of plaintiff's act. 601 F.2d at 488.

*Roecker v. United States*, 379 F.2d 400, 407 (5th Cir.), *cert. denied*, 389 U.S. 1005, 88 S.Ct. 563, 19 L.Ed.2d 600 (1967), seems to support plaintiffs' position but in fact does not. The court there wrote: "[E]ven though Mrs. Chiles [a nondiverse plaintiff] has since moved to Texas [a diverse state], the case must be remanded. In order to be removable on the ground of diversity, diversity must exist at the time the state action is commenced," 379 F.2d at 407 (citations omitted). This apparent support for plaintiff's position here is illusory. The removal in *Roecker* was not premised on Mrs. Chiles' move to Texas or even on diversity. The petition made no reference to the citizenship of the parties. (Indeed, it appears that Mrs. Chiles' move to Texas did not occur until after the filing of the petition.) The remark of the Court of Appeals is merely a speculation on whether the federal court's jurisdiction might be sustained on grounds that were never asserted as the basis of jurisdiction or removal.

*Tyler v. Bonaparte's Fried Chicken, Inc.*, 610 F.Supp. 58, 59–60 (M.D.La.1985) is also cited by plaintiffs, but does not support them. *Tyler* involved a change of citizenship by a defendant, not by a plaintiff.

And in *Quinn v. Aetna Life & Casualty Co.*, 616 F.2d 38, 40 n. 2 (2d Cir.1980), the court upheld the right of removal after the trial court had dismissed the case against the nondiverse defendant and plaintiff's time to appeal had expired. *But compare Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir.1967) (action remanded to allow appeal of state court involuntary dismissal); *see also Whitcomb v. Smithson*, 175 U.S. 635, 20 S.Ct. 248, 250, 44 L.Ed. 303 (1900). This supports the right to remove an initially nondiverse case when diversity is created by actions not within the control of the removing defendant.

The concern for manipulation of removal jurisdiction by the removing defendant is nonexistent where it is plaintiff's act which creates diversity. Wendy's, Sisters, and the Coca–Cola Company merely took advantage of a condition created by PepsiCo. To not allow the defendants to take advantage of a plaintiff's change of residence would raise a separate concern for manipulation. A plaintiff might defeat removal jurisdiction by moving into a nondiverse state prior to filing the action and then moving back to his diverse state of domicile after the action is commenced.

There may be good reason to bar removal if plaintiff's change of domicile did not occur until the eve of trial, much less during trial. But here the removal occurred at the start of the litigation.

## B. *Timeliness of Removal*

Plaintiffs also contend that the action was improvidently removed because the petition was not timely filed. Where an action was not removable at the time it was commenced, defendants have thirty days

"after receipt ... through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which ... has become removable" in which to file a removal petition. 28 U.S.C. § 1446(b) (1982). The parties dispute when the defendants first received notice that the case had become removable.

The defendants contend that they did not receive notice adequate under the statute until December 24, 1986, when they received the amended complaint indicating that PepsiCo had reincorporated in North Carolina. Plaintiffs contend that defendants received sufficient notice, first, on November 4, 1986 when they or related companies received copies of the PepsiCo proxy material concerning the proposed change of state of incorporation, and again on December 5 and 6, when the story was carried on the Dow Jones broad tape and in *The New York Times*.

■ Plaintiffs' argument is not persuasive. The November 4 notice was plainly insufficient; it did not indicate that PepsiCo had changed its place of incorporation, but only that it was considering doing so. I also find that the news service notice was inadequate. Although § 1446(b) has been construed broadly to include such notice as oral statements by plaintiff's counsel to the jury, *see Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328, 336–37 (D.S. C.1979), *appeal dismissed*, 622 F.2d 584 (4th Cir.1980); answers to interrogatories, *see Ellis v. The Logan Co.*, 543 F.Supp. 586, 589 (W.D.Ky.1982); and, deposition testimony, *see Brooks v. The Solomon Co.*, 542 F.Supp. 1229, 1230–31 (N.D.Ala.1982), courts have generally required that notice be ascertainable from the record or papers produced in the action itself, *see Gruner v. Blakeman*, 517 F.Supp. 357, 361 (D.Conn. 1981); *Avco Corp. v. Local 1010 of the Internat'l Union*, 287 F.Supp. 132, 133 (D.Conn.1968); *Putterman v. Daveler*, 169 F.Supp. 125, 129–30 (D.Del.1958). Moreover, even if notice external to the litigation might be acceptable in some circumstances, plaintiffs have not shown that this notice was sufficiently prominent to apprise the defendants.

Because the removal petition was filed within 30 days of defendants' receipt of notice on December 24, it was timely filed under § 1446(b).

## C. Addition of Nondiverse Parties in Amended Complaint

Next, plaintiffs contend there was no diversity at the time of removal because on December 24, prior to removal, the complaint had been amended to include two nondiverse plaintiffs. The defendants contend that the additional plaintiffs were not properly joined in accordance with New York procedure requiring leave of court under CPLR 1003 and thus do not destroy diversity.

■ As to plaintiffs' contention that defendants cannot rely on this argument because they did not raise it in the removal petition, I find it was sufficiently raised. In any event, a statement of grounds for removal may be clarified through amendment even after passage of the 30 days for filing the petition. *See Camacho v. Cove Trader, Inc.*, 612 F.Supp. 1190, 1192 (E.D. Pa.1985); *Sicinski v. Reliance Funding Corp.*, 461 F.Supp. 649, 652 (S.D.N.Y.1978); *Wright & Miller* § 3733, at 537.

Plaintiffs' more substantial argument is that the rule of CPLR 1003 requiring leave of court to add or drop a party conflicts with a plaintiff's absolute right under CPLR 3025(a) to amend the complaint once at the beginning of the litigation without leave of court. Plaintiff contends that the sensible resolution of the apparent inconsistency is to read the limitation of § 1003 as inapplicable to amendments made as of right at the start of the litigation under § 3025(a). Defendant argues that since the language of § 1003 is absolute, the right to amend pleadings at will at the start under § 3025(a) must be understood to exclude amendments that add or drop parties.

There is no reliable authoritative precedent as to which of these two absolute and inconsistent provisions trumps the other. Defendants point to one lower court ruling

30 years ago, under predecessor statutes which conflicted similarly. In *Pittman v. March Service Corp.*, 141 N.Y.S.2d 74, 76 (Sup.Ct. Kings Cty. 1955), a trial judge of Kings County Supreme Court asserted without explanation or discussion that to add or drop parties, Civil Practice Act § 192 (a predecessor to CPLR 1003) required a court order on notice and that "when a plaintiff amends his complaint as a matter of course, he does not have the right *to add or drop parties at will.*" (Emphasis in original.)

■ In my view the arguments supporting plaintiffs' view are so much more sensible and compelling, I believe they will be adopted by New York's highest court if it ever is required to face the question. CPLR 3025(a) recognizes that the initial pleading is often made in haste and without adequate information. It recognizes further that at the outset of the litigation, either prior to or within 20 days after the adversary's responsive pleading, the adversary will not have relied to its detriment on the particular form of the initial pleading. It recognizes also that as a practical matter a fair exercise of discretion by courts will nearly always permit early stage amendment of the pleading. (If permission is to be refused, it will be because the pleading is improper or contrary to law and not because it is an amendment. As such it could as easily be stricken upon a motion addressed to its errors of law.) Pulling together the factors favoring freely permitting early amendments with the near certainty that courts, if asked, would grant permission, the draftsmen of the rule determined to eliminate make-work and allow the one-time at-the-outset amendment of pleading without requiring a waste of everyone's time and money seeking the inevitably granted leave of court. If the plaintiff or defendant might have framed his pleading in this fashion a few days earlier, and will surely be permitted to restate it on request, who is harmed by allowing a revision to state 20 days later what could have been said 20 days earlier?

The same considerations apply to adding parties at the outset as to adding claims or allegations. If on Monday plaintiff served a complaint naming one plaintiff and one defendant, does it make any sense to bar him, in spite of § 1003, from freely amending it on Tuesday to add a plaintiff or a defendant? If a defendant answers and cross-claims naming four third-party defendants, should he be required to seek leave of court on notice to five preexisting parties if he recognizes two days later on receipt of better information that he left out a potential indemnitor?

In addition, there is a significant procedural reason to allow the early addition of parties without requiring a motion on notice. If the plaintiff decides within days after serving her complaint that there are additional defendants she should have named, she will have to wait a minimum of twenty days, and usually quite a bit longer, before a lawyer appears on behalf of defendants on whom plaintiff can serve a motion to add parties. As a result, the court's permission, although routinely to be granted, may not be available as a practical matter for months.

Defendants cite precedents which assert that a court's permission is essential to adding or dropping a party. *See Muka v. Sturgis*, 53 A.D.2d 716, 383 N.Y.S.2d 933, 934 (3d Dept.1976); *Catanese v. Lipschitz*, 44 A.D.2d 579, 353 N.Y.S.2d 250, 252 (2d Dept.1974); *Weinberg v. G.S.W. Realty Corp.*, 116 Misc.2d 503, 455 N.Y.S.2d 978, 980 (Sup.Ct.Kings Cty.1982). These seemingly categorical assertions simply reflect the language of CPLR 1003. The statements were not made in the context of the conflict between CPLR 1003 and 3025(a). They are of no value in resolving the conflict between the two rules. They might just as well have asserted that there is an absolute right to amend a complaint at the beginning of the litigation without leave of the court.

Likewise, one commentator supports defendants' position stating that court permission "seems necessary in view of CPLR 1003 which permits only the court to add or drop parties...." 3 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* § 3025.03 (1986). This statement, relying

only on the mandatory language of § 1003 could, no more and no less forcefully, have been turned to the opposite effect—that the absence of requirement of court permission "seems necessary in view of CPLR ... [3025(a)]] which permits" a party to amend pleadings at will without need of court permission at the start of the litigation. The conflict between the two provisions cannot be resolved by reference to their texts, which do not indicate which should be deemed subservient. One must look at the purposes of the statutes and the reasonableness of the alternative interpretations to decide which most likely serves the end intended by the New York legislature and which is the interpretation most likely to be adopted by New York's courts.

The Federal cases dealing with a similar issue under Fed.R.Civ.P. 15(a) (allowing amendment of pleadings as of right within 20 days or before a responsive pleading) and 21 (calling for court approval for adding or dropping a party) do not display a particular pattern. *Compare, e.g., McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870, 872–73 (1976), *vacated in part en banc on other grounds,* 545 F.2d 919 (5th Cir.1977) (Rule 15(a) controls amendments) *with La Batt v. Twomey,* 513 F.2d 641, 651 n. 9 (7th Cir.1975) (Rule 21 controls). Those decisions that favor requiring leave of the court to add parties even prior to the service of a responsive pleading seem to turn on the perception that Rule 21 is more specific than Rule 15(a). *See, e.g., Internat'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. AFL & CIO,* 32 F.R.D. 441, 442 (E.D.Mich.1963). This analysis is questionable on its own terms;

it is far from obvious that Rule 21 is the more specific provision. Rule 15(a) permits amendment of a pleading "once as a matter of course at any time before a responsive pleading or, if no responsive pleading is permitted and the action has not be placed upon the trial calendar, ... within 20 days after it is served." This seems to me at least as specific as the provision of Rule 21 that "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." (Rule 21.) *See McLellan,* 526 F.2d at 873; *Wright & Miller* § 1479, at 401. In any event, relative specificity does not seem as compelling a reason as those yielded by examination of the issues and the circumstances favoring free amendment within days of the service of a pleading. The policy of the Federal Rules promoting "the just, speedy, and inexpensive determination of every action," Fed.R.Civ.P. 1; *see also* CPLR 104, would be frustrated by favoring Rule 21 over Rule 15(a) without substantial reason.

■ I conclude that plaintiffs' filing of an amended pleading on December 24 was permitted as a matter of course under CPLR 3025(a) and effectively added Georgia plaintiffs of the same citizenship as defendant Coca–Cola.[1] Thus, when the defendants removed the action on January 5, there was not complete diversity of citizenship; the federal court lacked jurisdiction; and the removal was improvident within the meaning of 28 U.S.C. § 1447(c) requiring that the action be remanded to New York State Court.[2]

---

1. Defendants contend that the amendment did not properly add the nondiverse plaintiffs because it was not timely filed under CPLR 3025(a). The contention is frivolous.

   CPLR 3025(a) provides that a complaint may be amended "once without leave of the court within twenty days after service, or at any time before the period for responding to it expires, or within twenty days after service of a pleading responding to it." Defendants served a motion to dismiss on December 2, 1986. Under New York practice, service of a motion to dismiss extends the time to answer until ten days after service of notice of entry of the order denying the motion to dismiss. CPLR 3211(f). The court has not decided the motion to dismiss and

the answer has not yet been served. The amended complaint, accordingly, was timely.

2. In further support of the propriety of remand, plaintiffs contend that to the extent the amended complaint failed to properly join the additional bottlers, it should be treated as a pending motion to join; the motion should be granted; and the action remanded.

   Several decisions of this court, as well as other courts, have permitted post-removal joinder of nondiverse parties and have accordingly remanded actions otherwise properly removed. *See Desert Empire Bank v. Insurance Co. of North America,* 623 F.2d 1371 (9th Cir.1980); *McIntyre v. Codman & Shurtleff,* 103 F.R.D. 619

### D. *Effect of Joinder*

 Defendants contend that the additional bottlers are merely nominal parties with no legitimate cause of action and that accordingly their presence should not be considered in determining diversity. In considering a motion to remand, presence of a nondiverse party will be disregarded if "no cause of action or claim for relief is or could be stated ... on his behalf...." *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.*, 521 F.Supp. 1046, 1048 (S.D. N.Y.1981). The burden is on the defendant to prove that the nondiverse party is nominal. *See id.*

Defendants plainly have not satisfied this burden. For example, the third and fifth causes of action allege that Wendy's and Coca–Cola wrongfully induced others to breach various supply agreements. Defendants contend that the additional bottlers have no legitimate claim for relief under these causes of action because "no actual breach has occurred." (Def't's Mem. at 33.) Plaintiffs, however, contend that a breach has occurred (Casey Aff. ¶ 3 & Exs. 2–3; Rolfe Aff. of Dec. 30, 1986, ¶ 4; Maurer Aff. ¶ 18), and defendants have not produced contrary proof sufficient to rebut this claim at this point in the litigation.

Moreover, presence of the additional bottlers may in fact substantially change the character of the action. Defendants have alluded that they may oppose class certification, (*see* DX 3, at 22–23); if successful in their opposition, presence of the additional bottlers will be of substantial significance. Defendants have not shown that the additional bottlers were joined for an improper motive, such as to defeat diversity. To the contrary, in light of defendants' allusion that they intend to challenge the appropriateness of class action status, the joinder appears prudent.

I find that the bottlers are not simply nominal parties. Their joinder accordingly defeats diversity jurisdiction and requires that the action be remanded.

### III. *Conclusion*

Because at the time of removal there was not complete diversity of citizenship, the court lacked jurisdiction and the removal was improvident. The action is therefore remanded to New York Supreme Court. Because this court lacks jurisdiction, I do not reach the motion of Pepsi-Allied to intervene. The application for costs and attorneys' fees is denied. The Clerk is directed to transmit the file and a copy of this order to the Clerk of the New York Supreme Court, Westchester County.

SO ORDERED.

---

(S.D.N.Y.1984); *Shaw v. Munford*, 526 F.Supp. 1209 (S.D.N.Y.1981); *Soam Corp. v. The Trane Co.*, 506 F.Supp. 302 (S.D.N.Y.1980). The relevant inquiry in these cases has centered on the motive of the plaintiff in seeking to join the nondiverse parties and whether joinder is otherwise appropriate under Fed.R.Civ.P. 15 and 20. *See id.*

Although consideration of these factors favors the joinder of the additional bottlers, it is not altogether clear that a federal district court has authority to remand an action under 28 U.S.C. § 1447(c) subsequent to a valid removal. *Compare id. with Skinner v. American Oil Co.*, 470 F.Supp. 229 (S.D.Iowa 1979). The question whether an action properly removed can be remanded based on subsequent elimination of federal jurisdiction is not well settled, *see Carnegie–Mellon University v. Cohill*, 41 FEP Cases 1046 (3d Cir.), *vacated en banc*, 41 FEP Cases 1888 (1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 1283, 94 L.Ed.2d 141 (1987), and although the post-removal joinder may favor plaintiffs' position, I do not rely on this contention in reaching my determination that the action is properly remanded.