**EASTERN STEEL & METAL COMPANY et al.**

v.

**HARTFORD FIRE INSURANCE COMPANY.**

**Civ. No. N–74–19.**

United States District Court,
D. Connecticut.

May 17, 1974.

Louis Feinmark, New Haven, Conn., for plaintiffs.

William J. Egan, and Noel E. Hanf, New Haven, Conn., for defendant.

## RULING ON PLAINTIFFS' MOTION TO REMAND

*NEWMAN, District Judge.*

Plaintiffs move to remand this action to the Superior Court of Connecticut, County of New Haven, from which it was removed. Engaged in the business of steel importing, plaintiffs are Connecticut corporations, as is defendant, an insurance company.

A skeletal summary of the factual background will suffice for this motion. Defendant issued to plaintiff insurance policies covering certain steel being shipped from Mexico to purchasers in Cleveland and Chicago. The steel arrived in damaged condition. The purchasers were paid for the damages by defendant, since the policies had been endorsed over to them. Defendant then brought suit in the purchasers' name against the vessel, the vessel owner, the time charterer and the Chicago stevedore. They impleaded Jordan International Company (hereafter Jordan), the voyage charterer. The net result of that suit was that the vessel owner and time charterer made payments to the defendant for certain damages, and were in turn indemnified by Jordan. See Demsey & Associates v. S. S. Sea Star, 461 F.2d 1009, 1018–1019 (2d Cir. 1972).

In this suit, plaintiffs allege that defendant in effect collected from Jordan through the vessel owner and time charterer "payment for the very risks it had insured plaintiffs against" thereby violating the terms and conditions of the policies. Their action, they contend, is for common law breach of contract.

Defendant argues that this is an action on a maritime insurance policy, which is a maritime contract, and that such a claim is within federal admiralty jurisdiction and is governed by maritime law even though instituted in a common law court. Defendant contends removal was proper, notwithstanding the absence of diversity, because the twin requirements of 28 U.S.C. § 1441(b) are met: this Court has original jurisdiction under 28 U.S.C. § 1333, and the suit, involving maritime law claims, is a suit founded on a claim "arising under . . . laws of the United States. . . . ." Defendant does not specify whether removal was to the law side of this Court, or the admiralty side. Under either theory, however, removal was improper, and plaintiffs' motion must be granted.

■■■ By alleging § 1333 as the basis for original jurisdiction, and arguing that only admiralty jurisdiction is proper, defendant appears to be contending that the case was removed to the admiralty side. In that event, removal was certainly improper. Harbor Boating Club v. Red Star Towing & Transportation Company, 179 F.Supp. 755 (E.D.N.Y.1960); 1A Moore's Federal Practice ¶ 0.167(3.–1), at 942–43 (2d ed. 1965). The admiralty jurisdiction of this Court is not merely original, but exclusive as well. If this suit can be brought only as an admiralty action, and not as a common law action, there could be no jurisdiction in the Connecticut court. Conse-

quently there could be no removal to this Court, since jurisdiction under removal is derivative, and this Court cannot acquire jurisdiction where the state court had none, even if the suit might have been brought originally in federal court, Lambert Run Coal Company v. Baltimore & Ohio R. R., 258 U.S. 377, 383, 42 S.Ct. 349, 66 L.Ed. 671 (1922). See 1A Moore's Federal Practice ¶ 157(3), at 54–59 (2d ed. 1965).

■■■■ An alternative theory would be that removal was to the law side of the Court. Under that theory, however, the basis of original jurisdiction could not be § 1333, since suits invoking a federal court's jurisdiction under that section lie on the Court's admiralty side. Perhaps what the defendant has in mind is the following theory: § 1333 provides original jurisdiction for admiralty actions, but the "saving to suitors" clause preserves the right of plaintiffs to pursue common law remedies in the state courts; these plaintiffs sued in the state court pursuant to the right preserved by § 1333; § 1333 thus provides the authority for this action; the action is "therefore" one that could have been brought originally in the federal court under § 1333. If this is the argument, it is unsound. The only actions that can be brought in the district court under § 1333 are admiralty actions. If plaintiffs were properly in the state court, they must have had a common law action. Section 1333 preserves state court jurisdiction for such actions, but it surely does not create federal court jurisdiction for them. The only possible way a common law maritime action could be brought originally in the federal court is under the diversity jurisdiction, which is not present here, or under an interpretation of the federal question jurisdiction whereby a common law maritime

action (involving federal substantive law) was deemed to arise under the laws of the United States within the meaning of 28 U.S.C. § 1331. That interpretation was specifically rejected by the Supreme Court in Romero v. International Terminal Operating Company, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

■■■ Whatever the basis for original jurisdiction, defendant is incorrect in the contention that maritime claims involving federal law are claims "arising under" federal law within the meaning of § 1441(b).[1] The United States Supreme Court rejected a nearly identical contention—that maritime claims are embraced by the "arising under" language of 28 U.S.C. § 1331—in Romero v. International Terminal Operating Company, *supra*. There, plaintiff sought to invoke original jurisdiction on the law side of the federal court for his negligence suit under general maritime law rather than on the admiralty side under § 1333. The Court rejected that argument in an exhaustive analysis of the history, policy and logic of § 1331, refusing to place on the language "such a far-reaching, dislocating construction" and dealing directly with the impact of such a construction on removal jurisdiction. Romero v. International Terminal Operating Company, *supra*, 358 U.S. at 370, 371–372.

■■■ The non-removability of maritime litigation and saving clause actions, while not a formal holding of *Romero*, is an important piece of the majority's reasoning. Romero v. International Terminal Operating Company, *supra*, 358 U.S. at 363, 371–372. The Court made explicit its assumption that the "arising under" language has the same meaning under § 1441 as it does under § 1331, *id.*, at 363 n. 16; 371–73 n. 30. As a persuasive reason for avoiding the §

---

1. Of course if the maritime claim involves no federal substantive law, even the partial dissent in Romero v. International Terminal Operating Company, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), concedes that, absent diversity, there would be no federal court jurisdiction for such a claim. 358 U.S. at 401. *See* Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). Since this saving clause case is not removable, it is unnecessary to decide whether it involves a claim rooted in federal law.

1331 interpretation urged by the *Romero* plaintiff, the Court dramatically described the effect on § 1441: it would not only destroy the principle that suitors should be able to choose their forums, but also eviscerate the "long-established" and "deeply rooted" concurrent jurisdiction of the state courts in admiralty matters. "The role of the States in the development of maritime law," the Court stated, "is a role whose significance is rooted in the Judiciary Act of 1789 and the decisions of this Court." *Id.* at 372.

No persuasive reason is offered by defendant why the meaning of "arising under" should be different under § 1441(b) than under § 1331. Such inconsistency could hardly have been Congress' intent. On the contrary, the same considerations of history, policy and logic apply to § 1441(b).

Admiralty was specified by the Constitutional framers as a distinct and separate class of cases in Article III, distinguishable from cases "arising under." The "arising under" language was not incorporated into removal provisions until the Act of 1875.[2] To read that language as including maritime claims would eviscerate the saving clause, adopted by Congress in the Judiciary Act of 1789.[3] There is no historical evidence that Congress intended to sweep aside the states' concurrent jurisdiction in maritime matters—a jurisdiction "which it was the unquestioned aim of the saving clause of 1789 to preserve." Romero v. Terminal Operating Company, *supra*, 358 U.S. at 372. The interpretation urged by defendant would give § 1441(b) a "brand new meaning," *id.*; see 1A Moore's Federal Practice ¶ 0.-

156(1), at 43 (2d ed. 1965), raising many of the same "new complicated problems" foreseen by the Supreme Court if that interpretation were adopted for § 1331. *Id.*, at 375–378. Here, as in *Romero*, there should be reluctance to expand the jurisdiction of the federal courts through a broad reading of jurisdictional statutes. *Id.*, at 379.

The principle of non-removability of maritime matters absent diversity has been followed frequently, see, *e. g.*, Nesti v. Rose Barge Lines, Inc., 326 F. Supp. 170, 173 (N.D.Ill.1971); Harbor Boating Club v. Red Star Towing & Transportation Company, *supra*, 179 F. Supp. at 756; see also, Commonwealth of Puerto Rico v. Sea-Land Service, Inc., 349 F.Supp. 964, 977 (D.P.R.1970); 1A Moore's Federal Practice ¶ 0.167(3.–1), at 942–43 (2d ed. 1965).[4] The Supreme Court's reading of "arising under" in § 1331 as not including maritime matters has also received extensive support, see, *e. g.*, Dassigienis v. Cosmos Carriers & Trading Corporation, 442 F.2d 1016, 1017 (2d Cir. 1971); O. F. Shearer & Sons, Inc. v. Decher, 349 F.Supp. 1214, 1217–1218 (S.D.W.Va.1972). See also 1A Moore's Federal Practice ¶ 0.167(3.–3), at 945–46 (2d ed. 1965).

Defendant argues that the weight of this authority is much diminished by the Supreme Court's more recent citation with approval in Illinois v. City of Milwaukee, 406 U.S. 91, 96, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1971), of Justice Brennan's opinion in *Romero*. See Romero v. International Terminal Operating Company, *supra*, 358 U.S. at 389 (Brennan, J., concurring and dissenting). *City of Milwaukee*, however, does not disturb the holding of *Romero*, and the proposi-

---

**2.** Judiciary Act of 1875, § 2, 18 Stat. 470. *See* 1A Moore's Federal Practice ¶ 0.-156(2), at 41–43 (2d ed. 1965).

**3.** Judiciary Act of 1789, Act of Sept. 24, 1789, ch. 20, §§ 11 and 12, 1 Stat. 73.

**4.** But *see* Monarch Industrial Corporation v. American Motorists Insurance Company, 276 F.Supp. 972, 978 (S.D.N.Y.1967). The Court held that a suit on a policy of maritime insurance is removable as an action

"arising under" the Constitution of the United States. However, the Court made no mention or citation of Romero v. International Terminal Operating Company, *supra*, or any other lower court decisions dealing with the same issue or similar ones. Also, since diversity among the parties was clearly present, this part of the holding was not essential to the result, and removal of the suit might have been approved solely on the basis of original jurisdiction under § 1332.

tion for which the Court cited Justice Brennan's opinion is quite different from the one for which defendant is contending here. The question in *City of Milwaukee* was whether claimed violations of federal common law—resulting from pollution of interstate or navigable waters—create actions "arising under" laws of the United States within the meaning of § 1331. *City of Milwaukee* holds that federal common law is within § 1331 and presumably also § 1441. But *Romero* holds that maritime claims, though rooted in federal law, are not within § 1331 (or § 1441), whether the pertinent federal law is statutory or "common," *i. e.,* judge-made. In *City of Milwaukee,* the Court quoted Justice Brennan's argument that federal *maritime* law was not outside the meaning of "laws" in § 1331 merely because it was judge-made. But the Court, in the excerpt it quoted, was careful to delete all references to "maritime," relying on his opinion only for the more general proposition that federal common law is within the "arising under" language of § 1331. This left unimpaired the *Romero* ruling that maritime claims do not arise under federal law within the meaning of § 1331. This distinction was recognized by the earliest commentary on *Romero,* see Kurland, The Romero Case and Some Problems of Federal Jurisdiction, 73 Harv.L.Rev. 817, 827–33 (1960); Note, The Supreme Court, 1958 Term, 73 Harv.L.Rev. 84, 138–47 (1959), as well as more recent lower court decisions, Dassigienis v. Cosmos Carriers & Trading Corporation, *supra,* 442 F.2d at 1017.

Nor does the fact that *City of Milwaukee* involved a claim affecting navigable waters impair the rationale of *Romero.* Nothing in the Court's opinion in *City of Milwaukee* gives the slightest hint that the Court considered the claim there to be a maritime claim. What the Court was leaving to the district court under § 1331 jurisdiction was "equity suits in which the informed judgment of the chancellor will largely govern." 406 U.S. at 108.

Accordingly, plaintiffs' motion is granted, and the case is ordered remanded to the Superior Court of Connecticut, County of New Haven.