**QUEEN VICTORIA CORP., a Hawaii corporation, Plaintiff,**

v.

**INSURANCE SPECIALISTS OF HAWAII, INC., a Hawaii corporation; Roanoke International Insurance Agency, Inc.; Lloyd's Underwriters; John Does 1–10; and Doe Corporations 1–10, Defendants.**

Civ. No. 87–0745 VAC.

United States District Court,
D. Hawaii.

Aug. 25, 1988.

Sidney Michael Quintal, Honolulu, Hawaii, for plaintiff.

John R. Lacy, Mark B. Desmarais, Goodsill Anderson Quinn & Stifel, Honolulu, Hawaii, for defendants.

## DECISION TO REMAND ACTION

### SAMUEL P. KING, District Judge.

On July 11, 1988, this Court entered an Order remanding this action to state court as improvidently granted under 28 U.S.C. § 1441. Pursuant to that Order, this Decision more fully discusses the considerations necessitating remand.

### I. FACTS

A brief review of the facts will suffice in light of the disposition of this case. Plaintiff Queen Victoria Corporation, a Hawaii corporation and the legal and registered owner of a 1959 89'9" yacht of the same name (the "Queen Victoria"), originally filed this action in the First Circuit Court of the State of Hawaii on August 26, 1987. The complaint alleged damages caused by Defendant Lloyd's Underwriters' ("Lloyd's") breach of an insurance policy covering the hull and machinery of the vessel. Although the complaint names a number of other defendants in addition to Lloyd's, plaintiff served only Lloyd's and has consented to dismiss the other, non-served defendants without prejudice.[1]

On December 15, 1986, defendant Lloyd's issued plaintiff a policy of marine insurance whereby, *inter alia*, Lloyd's insured the hull of the yacht "Queen Victoria" in the amount of $425,000.00 [2]. For the purposes of the policy, the agreed value of the

vessel was set at $425,000.00. Among the risks covered were "[a]ccidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons ...".

According to the complaint, in December of 1986, while a binder was in force pending issuance of the final policy, the hull of the "Queen Victoria" was seriously damaged by improper blocking and drydocking at the Marisco Shipyard on Oahu. The complaint alleged that the expense of recovering and repairing the vessel would exceed the agreed value of $425,000.00 and that the vessel was therefore a "constructive Total Loss" under the terms of the policy, entitling plaintiff to the immediate payment of $425,000.00.[3] Lloyd's denies that the damage constituted a total loss and has not paid any part of that sum.

On October 6, 1987, Lloyd's removed the action to the United States District Court for the District of Hawaii on the ground that the suit "is an admiralty action wherein the matter in controversy involves a marine hull policy." During a pretrial conference held June 29, 1988, this Court *sua sponte* raised the issue of whether removal had been improvidently granted.[4] On July 12, 1988, having considered additional briefing and heard oral arguments on the jurisdictional issues, this Court ordered the action remanded to Hawaii state court.

### II. DISCUSSION

#### A. *Admiralty Jurisdiction Does Not Support Removal*

Plaintiff originally filed this action in Hawaii state court. Lloyd's removed it to the

---

1. Insurance Specialists of Hawaii, Inc., a Hawaii corporation, Roanoke International Insurance Agency, Inc., and numerous individual and corporate Does are named as additional defendants.

2. The standard hull insurance policy specifically covered the hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerated machinery, insulation, motor generators and other electrical machinery.

3. The "total loss" provision of the policy provides as follows:
   TOTAL LOSS
   In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in

respect of the damaged or break-up value of the Vessel or wreck shall be taken into account.
   There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed Value
   . . . .

4. It is the duty of the Court to determine if it has jurisdiction and, if it determines that the case has been removed improvidently, to remand it. 28 U.S.C. § 1447(c); *Trent Realty Assoc. v. First Fed. Sav. & Loan Ass'n*, 657 F.2d 29, 36 (3d Cir.1981); *Chambers–Liberty Counties Nav. Dist. v. Parker Bros. & Co.*, 263 F.Supp. 602, 604 (S.D.Tex.1967).

United States District Court for the District of Hawaii on the basis of admiralty jurisdiction. Removal on that basis was improvidently granted.

The analysis begins with 28 U.S.C. § 1441, the pertinent section of which authorizes removal of "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States ... without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b) (1973). An action on a marine insurance policy is indisputably within the original admiralty and maritime jurisdiction of the federal courts. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–14, 75 S.Ct. 368, 370–71, 99 L.Ed. 337 (1955); *Ins. Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1870); *Royal Ins. Co. of America v. Pier 39 Ltd.*, 738 F.2d 1035, 1036 (9th Cir.1984). This alone, however, does not satisfy the requirements of § 1441.

■ The Judiciary Act of 1789, which conferred admiralty jurisdiction on the district courts, also reserved to plaintiffs their right to choose a state forum. In its present form, the saving to suitors clause of the Act provides that:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*

28 U.S.C. § 1333 (1966) (emphasis added).[5] Thus, with a few exceptions not pertinent to this case, under the saving to suitors clause the state courts share concurrent jurisdiction with federal courts over *in personam* maritime claims. *Madruga v. Superior Court of California*, 346 U.S. 556,

560–61, 74 S.Ct. 298, 300–01, 98 L.Ed. 290 (1954); 1A Moore's Federal Practice para. 0.167[3.–1], 462–73.

■ As a necessary corollary of the saving to suitors clause, an *in personam* maritime claim brought in state courts may not be removed pursuant to 28 U.S.C. § 1441 absent diversity or a federal question. In *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the Supreme Court established that admiralty cases do not "arise under" the Constitution, treaties or laws of the United States. Although *Romero* addressed 28 U.S.C. § 1331, the general federal question jurisdiction statute,[6] Justice Frankfurter's opinion is also directly pertinent to the issue of removal of "saving to suitors" cases under § 1441 in its emphasis on the importance of preserving the choice of forum guaranteed by the clause:

... the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of § 1331, since saving-clause actions would then be freely removable under § 1441 of Title 28. The interpretation of the Act of 1875 contended for would have consequences more deeply felt than the elimination of a suitor's traditional choice of forum. By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters —a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve. This disruption of principle is emphasized by the few cases actually involved. This small number of cases is only important in that it negatives the pressure of any practical consideration

---

5. The original Act read:
"... the district courts ... shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction ... saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it ..."
1 Stat. 76–77. The subsequent modifications of the language were not intended to narrow state

court jurisdiction. *Madruga v. Sup. Ct. of California*, 346 U.S. 556, 560 n. 12, 74 S.Ct. 298, 300 n. 12, 98 L.Ed. 290 (1954).

6. "§ 1331. *Federal Question.* The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

for the subversion of a principle so long-established and so deeply rooted. The role of the States in the development of maritime law is a role whose significance is rooted in the Judiciary Act of 1789 and the decisions of this Court. It indicates the extent to which an expanded view of the Act of 1875 would eviscerate the postulates of the saving clause, and it undermines the theoretical basis for giving the Act of 1875 a new meaning. 358 U.S. at 371–72, 79 S.Ct. at 479–80. The cases following *Romero* have nearly uniformly precluded removal of "maritime" actions from § 1441(b)'s "arising under" language. *See, e.g., Holcomb v. ERA Helicopters, Inc.,* 618 F.Supp. 339 (W.D.La. 1985); *Superior Fish Co., Inc. v. Royal Globe Ins. Co.,* 521 F.Supp. 437, 440–41 (E.D.Pa.1981); *J.J. Ryan & Sons, Inc. v. Continental Ins. Co.,* 369 F.Supp. 692 (D.S.C.1974); 1A Moore's Federal Procedure para. 0.167[3.–1] at 463–64; *but cf. Azzopardi v. Ocean Drilling & Exploration Co.,* 742 F.2d 890 (5th Cir.1984) (permitting removal of general maritime claim where state court had jurisdiction under saving clause). To allow removal to federal court once plaintiff has exercised his option to proceed in state court under the saving clause would render its guarantee of choice of forum a nullity.

■ Neither may removal be effected independently under § 1441(a), which generally provides for removal of any civil action brought in a state court over which the federal courts have original jurisdiction.[7] "For removal to be proper, the requirements of both subsections (a) and (b) of § 1441 must have been fulfilled." *Nesti v. Rose Barge Lines, Inc.,* 326 F.Supp. 170, 172 (N.D.Ill.1971); *Crawford v. East Asiatic Co.,* 156 F.Supp. 571 (N.D.Cal.1957).

Moreover, even if the identical facts would have supported a federal admiralty action in the first instance, the fact is that plaintiff brought this in state court as a *civil* action. *See J.J. Ryan & Sons,* 369 F.Supp. at 697; 1A Moore's Federal Practice para. 0.167[3.–1] at 465. That civil action, lacking diversity or a federal question as a basis for federal jurisdiction, could not have been brought originally in federal court.[8] § 1441(a) does not override the considerations so thoughtfully expressed in *Romero* and echoed in the numerous cases precluding removal of saving clause cases.

■ Finally, defendants argue that plaintiffs waived their objections to removal by failing to seek remand and that plaintiffs have consented to federal jurisdiction. Mutual consent cannot confer substantive jurisdiction. *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951) (superseded by statute on other grounds); 1 Moore's Federal Practice para. 0.60[4]. Since the federal court did not have original jurisdiction over the civil action, plaintiff's "waiver" of his objections to federal jurisdiction cannot expand this Court's jurisdictional grant to encompass a power which Congress has not extended it. *Finn,* 341 U.S. at 18, 71 S.Ct. at 542.

B. *Diversity Jurisdiction Does Not Cure Faulty Removal on Basis of Admiralty Jurisdiction*

Plaintiff now argues that, even if admiralty jurisdiction cannot sustain removal, the action is nevertheless properly before this Court on diversity jurisdiction. This contention suffers from two fatal flaws.

■ First, defendant's petition for removal did not state diversity as a ground

---

7. "§ 1441(a). Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

8. It is not inconceivable that an attorney might mistakenly file what is clearly intended to be an admiralty action in state court. In such a case, given the 1986 addition of § 1441(e) permitting removal of cases improperly before the state courts, removal on the basis of admiralty jurisdiction might be proper. *Compare Eastern Steel & Metal Co. v. Hartford Fire Ins. Co.,* 376 F.Supp. 763 (D.Conn.1974) (pre–1986 amendment); *Safir v. Compagnie Generale Transatlantique,* 241 F.Supp. 501 (E.D.N.Y.1965) (same). That, however, is not the case before this Court.

for removal, but relied solely on the basis of admiralty jurisdiction.[9] *Compare Armada Coal Export, Inc. v. Interbulk, Ltd.,* 726 F.2d 1566, 1568 (11th Cir.1984) (allowing late amendment where diversity jurisdiction was apparent from the face of removal petition). Lloyd's does not now ask this Court for leave to amend the petition to allege diversity or a federal question, and indeed, coming long after the statutory 30 day period for removal, such a request to add new jurisdictional allegations missing from the original petition would be denied as untimely. *Thompson v. Gillen,* 491 F.Supp. 24 (D.C.Va.1980); *Winters Government Securities v. Nafi Emp. Credit,* 449 F.Supp. 239 (S.D.Fla.1978).

■ Second, the lack of complete diversity between the parties would have precluded removal on that basis. Plaintiff, a Hawaii corporation, named but did not serve a Hawaii corporation, Insurance Specialists of Hawaii, Inc., as well as numerous Doe defendants. Under the law of this Circuit, "the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *Clarence E. Morris, Inc. v. Vitek,* 412 F.2d 1174, 1176 & n. 1 (9th Cir.1969), *citing Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939); *Preaseau v. Prudential Ins. Co. of America,* 591 F.2d 74, 78–79 (9th Cir.1979); *Apelian v. United States Shoe Corp.,* 664 F.Supp. 1370, 1372–73 (C.D.Cal.1987) (nonserved Doe defendants defeat diversity for purposes of removal).[10] Because the complaint named nondiverse, albeit nonserved, defendants at the time of removal, it could not have been removed as a diversity action.

### III. SUMMARY

The saving to suitors clause guarantees to plaintiffs in maritime or admiralty mat-

ters their choice of pursuing a civil action in state court or an admiralty action in the federal court. Plaintiffs in this action exercised their choice to bring a civil action in Hawaii state court, and defendant may not undermine that choice by removing the suit to federal court as an action arising under the Constitution, treaties or laws of the United States. As there is no proper basis for federal jurisdiction, remand to state court is necessary.

---

9. The removal petition states that "[t]he above-described action is one of which this court has original jurisdiction under the provisions of Title 28, United States Code, Section 1333, and is one which may be removed to this court by the petitioner pursuant to the provisions of Title 28, United States Code, Section 1441 in that it is an admiralty action wherein the matter in controversy involves a marine hull policy."

10. Because of differences between the Hawaii and California provisions for naming Doe defendants, the presence of Doe defendants here does not of itself compel remand pursuant to *Bryant v. Ford Motor Co.,* 844 F.2d 602 (9th Cir.1987) (*en banc*) (as amended), petition for certiorari filed (U.S. July 15, 1988).