McALLISTER BROTHERS, INC., et al., Plaintiffs,

v.

OCEAN MARINE INDEMNITY CO., and Gulf Coast Marine, Inc., Defendants & Third–Party Plaintiffs,

v.

SEAHAWK INTERNATIONAL, INC., Third–Party Defendant.

No. 87 Civ. 3840 (RJW).

United States District Court,
S.D. New York.

Dec. 22, 1989.

George W. Sullivan, Lilly Sullivan Purcell Barkan & Junge PC, New York City, for plaintiffs.

Douglas R. Burnett, Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City, for defendants and third-party plaintiffs.

Leonard H. Rubin, New York City, for third-party defendant Seahawk.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

This action concerns a contract of marine insurance which was obtained by McAllister Brothers, Inc. on its own behalf and on behalf of various insured interests (collectively "McAllister"), and which was brokered by third-party defendant Seahawk International, Inc. ("Seahawk"). Defendants and third-party plaintiffs Ocean Marine Indemnity Co. ("Ocean Marine") and Gulf Coast Marine, Inc. ("Gulf Coast") are, respectively, a five percent participant in the underwriting of the insurance policy and its parent company and managing general agent.

Originally, this action was filed in the Supreme Court of the State of New York, County of New York. On June 11, 1987, Ocean Marine and Gulf Coast removed the action to this Court pursuant to 28 U.S.C. § 1441. Plaintiffs did not oppose removal. In a decision filed on January 4, 1988, the Court granted defendants' motion to implead Seahawk into this action pursuant to Rule 14, Fed.R.Civ.P.

Pursuant to Fed.R.Civ.P. 56(b), all parties have moved for summary judgment on the issue of liability under the insurance policy. Ocean Marine and Gulf Coast contend that coverage under the policy lapsed due to nonpayment of premiums, and effective notice of cancellation was given to plaintiffs. McAllister and Seahawk allege that the cancellation was ineffective, or if effective, was rescinded. Alternatively, they argue that the cancellation was a breach of the terms of the insurance policy. Ocean Marine and Gulf Coast have also moved, pursuant to Rule 12(b)(6), Fed.R. Civ.P., for dismissal of plaintiffs' claim for punitive damages.

Additionally, Seahawk has moved for (1) remand of this action to state court pursuant to 28 U.S.C. § 1447(c), (2) dismissal of the third-party claims against it due to a number of alleged jurisdictional and procedural defects, pursuant to Rules 9(b), 12(b) and 14, Fed.R.Civ.P., and (3) sanctions against third-party plaintiffs and their counsel pursuant to Rule 11, Fed.R.Civ.P. In response, Ocean Marine and Gulf Coast cross-moved to amend the third-party complaint pursuant to Rule 15, Fed.R.Civ.P. and for the imposition of Rule 11 sanctions against Seahawk and its counsel.

By order filed on June 14, 1989, this action was referred to the Honorable James C. Francis IV, United States Magistrate, to report pursuant to 28 U.S.C. § 636(b)(1) and Rule 4 of the Local Rules for Proceedings Before Magistrates. On August 30, 1989, Magistrate Francis filed his Report and Recommendation (the "Report") in which he recommended that the motions for summary judgment, the motion for remand to state court and the motion to dismiss the third-party complaint be denied, that the motion to dismiss the claim for punitive damages be granted, and that leave be granted to amend the original and third-party complaints. Report at 2.

All of the parties have made timely written objections to a portion or portions of the magistrate's Report. The Court has reviewed the Report and has considered *de novo* those portions to which there were objections. For the following reasons, the Court accepts, with certain modifications, the magistrate's proposed findings and recommendations.

## BACKGROUND

McAllister Brothers, Inc., a shipping company with headquarters in New York, obtained insurance protection for vessels in its ownership or control through Seahawk, a New York-based broker of marine insurance. The contract of marine insurance in dispute, Marine Hull and Machinery Policy No. SI–001–86 H & M (the "Policy" or the "Contract"), was to have been in effect from March 1, 1986 to March 1, 1987, and required the payment of a $2,700,000.00 premium by McAllister. At its inception, the Contract covered 107 vessels, barges, and various other pieces of marine equipment against damage to hull and machinery. The Contract provided that each vessel was to be deemed a separate interest, individually insured in all respects, as if a separate policy had been issued for it.

The parties dispute who prepared the terms and conditions of the Policy. Magistrate Francis found that the terms of the Policy were prepared by Seahawk, and, as is customary in the marine insurance business, Seahawk then sought underwriters to cover the risks insured under the policy. Report at 3. McAllister maintains that the Policy was prepared by Atlantic Mutual Insurance Company ("Atlantic"), which subscribed to twenty-five percent of the coverage to be provided and assumed the role of lead underwriter for the Policy. According to McAllister, Seahawk only carried out the mechanical preparation of the Policy, not its substantive drafting, and then submitted the terms and conditions set forth by Atlantic to the various sub-

scribing underwriters for acceptance. Ocean Marine and Gulf Coast subscribed to a 5% participation in the coverage provided under the Policy. Neither Ocean Marine nor Gulf Coast had any role in drafting or issuing the Contract.

The terms of the Policy do not specify conditions for payment of premiums.[1] The binder for the Policy, however, provides that the total premium of $2,700,000.00 was to be "payable quarterly (premium financed)." The various underwriters did not bill McAllister directly for premiums. Instead, McAllister made payments to Seahawk which, in turn, made payments to the underwriters. On March 25, 1986, Seahawk sent McAllister four quarterly premium invoices that reflected quarterly payments due on March 1, June 1, September 1, and December 1, of that year.

During the term of the Policy, coverage for additional vessels was agreed upon and previous coverage for vessels was deleted. These changes were reflected in periodic endorsements issued by Seahawk and submitted to the underwriters. The endorsements set forth schedules which included quarterly dates for the payment of additional premiums for new coverage or for the return of premiums for deleted coverage, beginning from the date of the change in coverage. Periodically, Seahawk would send invoices to plaintiffs reflecting debits or credits for these changes. These invoices generally reflected payments due or returnable quarterly, but some reflected lump sums due or returnable within a particular quarter.

McAllister asserts that the frequent addition and deletion of insured vessels through the endorsement process required it continually to reassess and recalculate payments due to Seahawk. According to McAllister, as a matter of convenience, a net balance for endorsements, whether a debit or a credit, was to be determined as

the expiration date for the Policy approached, not on a quarterly basis. Ocean Marine and Gulf Coast argue that there was no such practice in effect, and that the adjustments for the endorsements were payable or returnable quarterly.

McAllister did not make the premium payments required by the Contract on the quarterly due dates. The first two premium installments paid to Seahawk by McAllister were received on or about April 10 and July 22, 1986, respectively. Payment of the third installment to Seahawk was apparently made on October 20, 1986.[2]

Magistrate Francis found that Seahawk, after receiving McAllister's check for the third-quarter premium installment, forwarded payment to Gulf Coast for its share of the third quarter premium. Report at 5–6. Prior to receipt of this check, however, Gulf Coast sent a letter to Seahawk dated October 22, 1986, stating that "[i]n accordance with the non-payment of premium provisions of this policy, we hereby give thirty (30) days notice of cancellation."

The Seahawk check was received by Gulf Coast on October 23, 1986, and was acknowledged in a handwritten postscript to a second letter from Gulf Coast to Seahawk dated October 23, 1986, which stated:

> The list of open items attached to my letter of October 22, 1986 was incorrect as it reflected open items as of August 19, 1986.
>
> Enclosed is a corrected list showing open items as of October 21, 1986. The items shown in the attached statement for McAllister are those that need to be paid in order that we can reinstate coverage....
>
> P.S. I acknowledge your payment of the third quarter but still need to have the endorsements paid.

The attached statement included McAllister's third-quarter premium, crossed out by

---

1. Plaintiffs' insurance policies for the previous two years, 1984–1985 and 1985–1986, also brokered by Seahawk, contain more specific language as to timing of the payment of premiums. For example, the 1984–1985 policy states that "premiums shall be paid within 60 days of each quarterly due date."

2. Ocean Marine and Gulf Coast contest this assertion, but have not produced any tangible proof to rebut the evidence presented by McAllister that such payment was made at that time.

hand, and a number of debit and credit listings under the heading "McAllister Brothers," dated March, April and May 1986.

The October letters from Gulf Coast were not sent directly to McAllister. As the magistrate found, it is unclear from the submissions just when McAllister received actual notice of Gulf Coast's attempt at cancellation. Testimony by the president of Seahawk indicates that Seahawk immediately delivered a copy of the Gulf Coast letters to McAllister, but believed that payment of the third-quarter premium settled the issue. McAllister contends that it believed that coverage under the Policy remained intact, that the first notice it had of the alleged cancellation was received from Windward International, its claims adjuster, and that it was not until February 20, 1987 that an actual copy of the October 22, 1986 Gulf Coast letter was received from Seahawk. Gulf Coast and Ocean Marine dispute these assertions, and claim that, in addition to the notice McAllister received from Seahawk in October, McAllister received notice of the cancellation in January 1987.

The Policy contains a cancellation clause that states:

In the event of non-payment of premium when due, this policy may be cancelled by Underwriters provided 30 days written notice is provided. With the exception of premium non-payment, this policy may not be cancelled except by mutual consent. Premiums are returnable in accordance with the provisions of the American Institute Hull Clauses (6/2/77) as respects non-payment of premium, mutual agreement (sic) to cancel or termination under change of ownership clause therein.

The American Institute Hull Clauses (the "Hull Clauses") contain a non-payment of premium provision which provides, in part, that:

In event of non-payment of premium 30 days after attachment, or of any additional premium when due, this Policy may be cancelled by the Underwriters upon 10 days written or telegraphic notice sent to the Assured at his last known address or in care of the broker who negotiated this Policy.

Ocean Marine and Gulf Coast contend, in effect, that the Hull Clauses' non-payment of premium provision was a material part of the Policy, thereby providing that effective notice of cancellation could be given to either McAllister or Seahawk. On the other hand, McAllister and Seahawk assert that the Hull Clauses' non-payment provision is applicable only regarding return of premiums, not cancellation for non-payment of premiums. They maintain, therefore, that notice to McAllister was required for effective cancellation.[3]

At the time of the cancellation letters, Gulf Coast was owed $2,047.65 in premiums for endorsements, utilizing a debit and credit calculation. On the basis of later returns for vessels that were deleted prior to October 22, 1986, the net amount of endorsements was determined to be $1,029.39. Gulf Coast did not receive payments for the fourth-quarter premium or for endorsements for the entire policy period.

Gulf Coast, however, made payments to plaintiffs subsequent to its October 22, 1986 letter of cancellation. Payments of $57,979.89 and $35,420.86 were made which reflected balances on claims that had accrued prior to October 22, 1986. Gulf Coast has not paid its five percent share of claims submitted for payment arising out of casualties occurring after November 22, 1986, the date from which it claims the cancellation notice became effective. The five percent share of casualties incurred from November 22, 1986 to March 1, 1987 presently equals $382,991.66. Additional casualties were suffered by insured vessels during this period, but have not yet been

---

3. Plaintiffs' 1984–85 and 1985–86 insurance policies contained far clearer language on this issue: Notice of policy cancellation or material change to Seahawk shall constitute notice to

McAllister Brothers, Inc. and/or any required notice to their additional Assureds and other interests.

adjusted or submitted to the underwriters for payment.

## DISCUSSION

 To accept the report and recommendation of a magistrate to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record. *See* Rule 72, Fed.R.Civ.P., Notes of Advisory Committee on Rules (citing *Campbell v. United States District Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). 28 U.S.C. § 636(b)(1) affords the district court broad latitude in considering a magistrate's recommendation, and the court is not bound by the recommendation, even if no party objects to it. *Grassia v. Scully*, 892 F.2d 16, 18–19 (2d Cir.1989). When timely objection has been made to a portion or portions of a magistrate's report, however, the district judge must "make a *de novo* determination ... of any portion of the magistrate's disposition to which specific written objection has been made." Rule 72(b), Fed.R.Civ.P.; *see also* 28 U.S.C. § 636(b)(1). The judge may then accept, reject, or modify in whole or in part, the magistrate's proposed findings and recommendations. 28 U.S.C. § 636(b)(1).

A district court's obligation to make a *de novo* determination of properly contested portions of a magistrate's report does not require that the judge conduct a *de novo* hearing on the matter. *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). It is sufficient that the district court "arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made." *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir.1983). To this end, the court must "exercise sound judicial discretion with respect to whether reliance should be placed on the magistrate's findings." *American Express Int'l Banking Corp. v. Sabet*, 512 F.Supp. 472, 473 (S.D.N.Y.1981), *aff'd without opinion*, 697

F.2d 287 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982).

In the instant case, all of the parties have filed timely written objections to the magistrate's Report. McAllister, Seahawk, Gulf Coast and Ocean Marine object to the magistrate's recommendation that their motions for summary judgment be denied. Seahawk objects to the magistrate's recommendation that the motion for remand to state court be denied, and to all of the magistrate's Report under the heading "Claims Against Third–Party Defendant."

### A. Jurisdiction

Gulf Coast and Ocean Marine cited both diversity and admiralty as the jurisdictional basis for removal of this action to federal court. Seahawk asserts that there was no legal basis for removal based on admiralty jurisdiction and no factual basis for diversity jurisdiction. Gulf Coast, Ocean Marine and McAllister assert that removal was proper, and that any improprieties that may exist should be remedied by amendment of the complaint.

### 1. Admiralty Jurisdiction

District courts have exclusive jurisdiction over admiralty and maritime cases pursuant to 28 U.S.C. § 1333(1).[4] Nonetheless, under the saving to suitors clause of section 1333(1), plaintiffs with a common law claim arising from a transaction over which a federal court would have admiralty jurisdiction may either avail themselves of federal admiralty jurisdiction or sue at law in state court. *E.g.* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3672 at 430–333 (1985) (hereinafter *"Wright & Miller"*).

 Admiralty cases fall within the district court's original jurisdiction, but are not cases "arising under" the Constitution, laws or treaties of the United States for purposes of original federal question jurisdiction under 28 U.S.C. § 1331 or 28 U.S.C.

---

4. Section 1333(1) provides that:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all other cases all other remedies to which they are otherwise entitled.

§ 1441(b). *Romero v. International Terminal Operating Co,* 358 U.S. 354, 363, 367–68, 79 S.Ct. 468, 477–78, 3 L.Ed.2d 368 (1959). Until recently, it had been the case that actions arising solely under admiralty jurisdiction which were mistakenly filed in state court could never be removed to federal court because of the derivative nature of removal jurisdiction; a federal court could not acquire jurisdiction on removal because the state court had no jurisdiction over the case in the first instance. *See Yangming Marine Transport Corp. v. Electri–Flex Co.,* 682 F.Supp. 368, 372 (N.D.Ill.1987); *Eastern Steel & Metal Co. v. Hartford Fire Insurance Co.,* 376 F.Supp. 763, 764–65 (D.Conn.1974); *Wright & Miller* § 3674 at 460, § 3721 at 196–97. This jurisdictional limitation on the federal courts was eliminated by the Judicial Improvements Act of 1985, Pub.Law No. 99–336, § 3, 100 Stat. 633, 637 (1986) (codified at 28 U.S.C. § 1441(e)), which provides that:

> The court to which [a] civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

The purpose of this provision was to eliminate the judicial inefficiency created by the "arcane" concept of derivative jurisdiction. H.Report No. 99–423, 99th Cong., 2d Sess. 13, *reprinted in,* 1986 U.S.Code Cong. & Admin.News, 1545, 1553.

One court has held that the addition of section 1441(e) implies that actions embracing admiralty jurisdiction filed in state court may now be removable under 28 U.S.C. § 1441(a), which provides for removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," and 28 U.S.C. § 1441(b), which limits such removal in non-federal question actions to those situations where "none of the ... defendants is a citizen of the state in which such action is brought." *See Yangming Marine Transport Corp. v. Electri–Flex Co., supra,* 682 F.Supp. at 372–73. Such a broad interpretation of a defendant's ability to remove admiralty matters pursuant to section 1441 may lead to certain anomalous results, *see id.* at 373; *Wright & Miller* § 3674 at 466, and would tend to eviscerate the choice of forum guaranteed under the saving to suitors clause in section 1331. *See Romero v. International Terminal Operating Co, supra,* 358 U.S. at 371–72, 79 S.Ct. at 479–80. Other courts have adopted a narrower interpretation of the effect of section 1441(e), allowing removal only if the action was one exclusively within federal maritime jurisdiction, but mistakenly filed in state court. *See Estate of Morales v. New Orleans Gulf Harbor Services, Inc.,* 703 F.Supp. 501, 502 (M.D.La. 1989).

■ Similarly, where plaintiffs mistakenly file an action in state court that could fall within the saving to suitors exception to exclusive admiralty jurisdiction, but actually intended to file the action as one in admiralty, removal on the basis of admiralty jurisdiction under § 1441(a), (b), and (e) may well be proper. *See Queen Victoria Corp. v. Insurance Specialists of Hawaii, Inc.,* 694 F.Supp. 1480, 1483 n. 8 (D.C.Hawaii 1988). Such is the case here. Plaintiffs acquiesced in the removal of this action. They have consistently and forcefully maintained that their claims are admiralty claims, within the admiralty jurisdiction of this Court, not state claims filed under the saving to suitors clause. Indeed, an action on a marine insurance policy is indisputably within the original admiralty jurisdiction of the federal courts, *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 313–14, 75 S.Ct. 368, 370–71, 99 L.Ed. 337 (1955); *Queen Victoria Corp. v. Insurance Specialists of Hawaii, Inc., supra,* 694 F.Supp. at 1482, and Seahawk has abandoned its argument that the declaratory relief sought by plaintiffs is outside the scope of admiralty jurisdiction. Moreover, plaintiffs' own insistence that they intended their claims to be admiralty claims eliminates any threat that treating the action as one within the Court's admiralty jurisdiction will unduly restrict plaintiffs' choice of forum under section 1333(1). *Cf. Romero v. International Terminal Operating Co, supra,* 358 U.S. at 371–72, 79 S.Ct. at 479–80. Holding that this action is within the

Court's admiralty jurisdiction is fully consistent with the requirements of the removal provisions of section 1441, and gives effect to plaintiffs' clear intention to have their claims heard in admiralty, despite their initial filing in the state court.[5] Accordingly, the Court concludes that this action is properly within federal admiralty jurisdiction.

## B. *Summary Judgment on Liability*

■ A court may grant the extraordinary remedy of summary judgment only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56,

Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–250, 106 S.Ct. 2505, 2509–2511, 91 L.Ed.2d 202 (1986)), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Only if "no reasonable trier of fact could find in favor of the nonmoving party" should summary judgment be granted. *H.L. Hayden Co. of New York, Inc. v.*

---

**5.** McAllister, Ocean Marine and Gulf Coast also argue that if this action is deemed to be a state court action under the saving to suitors clause, diversity jurisdiction under 28 U.S.C. § 1332 provides an independent jurisdictional basis for removal to federal court. *See Arno v. Costa Line, Inc.*, 589 F.Supp. 1576, 1578 n. 2 (E.D.N.Y. 1984). *See also Wright & Miller* § 3674 at 460, 466.

Presently, there is not complete diversity in this case. Gulf Coast and Ocean Marine are Louisiana corporations while one of the seventy-three plaintiffs, Offshore Express, Inc. ("Offshore"), is also a Louisiana corporation. McAllister and defendants/third-party plaintiffs have offered to dismiss Offshore from the action without prejudice. Magistrate Francis concluded that Rule 21, Fed.R.Civ.P., provided the Court with the discretion to dismiss Offshore in order to retain jurisdiction over the action, and recommended that the complaint be amended to remove the nondiverse party. Report at 12.

Seahawk objects to this recommendation. It argues that Rule 21 is inapplicable to removal actions, because 28 U.S.C. § 1447(c) leaves no room for the dismissal of nondiverse parties by the Court. In support of its argument, Seahawk relies on *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 402–03, (8th Cir. 1977), where the court found that it was improper to drop certain nondiverse plaintiffs from the action over their objections, because they were real parties in interest who were not fraudulently joined to defeat diversity jurisdiction. The court based its decision on the deference to be afforded a plaintiff's valid choice of forum, and remanded for lack of diversity. *Id.* at 406. *See* 3A *Moore's Federal Practice* ¶ 21.03[2] n. 6, at 21–13 (2d ed. 1989) (citing *Iowa Public Service Co. v. Medicine Bow Coal Co., supra,* 556 F.2d at 402).

Contrary to Seahawk's assertions, however, the Court does not perceive any inability on the part of plaintiffs to amend the complaint to remove the nondiverse plaintiff, thereby satisfying the requirements of diversity jurisdiction, if

diversity was necessary to maintain this action in federal court. The dismissal of a nondiverse party from the action will result in removal being proper under 28 U.S.C. § 1446(b), at least when the dismissal is due to the voluntary act of the plaintiff, because such a dismissal eliminates any concern that a nondiverse defendant may manipulate the court's jurisdiction in order to frustrate the plaintiff's valid choice of a state forum. *See Pepsico, Inc. v. Wendy's International, Inc.*, 118 F.R.D. 38, 40–41 (S.D.N.Y.1987). *Cf. Iowa Public Service Co. v. Medicine Bow Coal Co., supra,* 556 F.2d at 406.

Typically, dismissal of a nondiverse party will occur in the state court, thereby making removal, which had not yet occurred, appropriate. Similarly, it is the general rule that complete diversity must exist at the time an action is commenced and at the time of removal. *LGP Gem Ltd. v. Cohen*, 636 F.Supp. 881, 882 (S.D.N.Y.1986). Nonetheless, while the existence of jurisdiction ordinarily depends on the facts as they exist when the complaint is filed, Rule 21 provides an exception to this general rule. *See Newman–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, ——, 109 S.Ct. 2218, 2220, 104 L.Ed.2d 893 (1989). Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if his presence in the action is not required under Rule 19, Fed.R. Civ.P. *See 7 Wright & Miller*, § 1685 at 457 (1972).

The Court concurs with Magistrate Francis' finding that Offshore is such a dispensable nondiverse party. *See* Report at 12. Seahawk has indicated no reason for barring Rule 21 from removed cases, other than deference to a plaintiff's choice of forum. That rational is inapplicable in this case. Accordingly, even if this action did not fall within the Court's admiralty jurisdiction, Offshore could be dismissed from the lawsuit in order to preserve diversity jurisdiction, and remand to state court would be unnecessary.

78

*Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1011 (2d Cir.1989). In other words, only where the entire record would inevitably lead a rational trier of fact to find for the moving party is summary judgment warranted. *National Railroad Passenger Corp. v. City of New York,* 882 F.2d 710, 713 (2d Cir.1989).

■ As noted above, the parties in the instant case have each moved for summary judgment. Cross-motions for summary judgment, however, do not warrant the granting of summary judgment unless the Court finds that "one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Frouge Corp. v. Chase Manhattan Bank,* 426 F.Supp. 794, 796 (S.D.N.Y. 1976). *See also Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau,* 766 F.2d 709, 716 (2d Cir.1985); *Schwabenbauer v. Board of Educ.,* 667 F.2d 305, 313–14 (2d Cir.1981); *Home Ins. Co. v. Aetna Casualty and Surety Co.,* 528 F.2d 1388, 1390 (2d Cir.1976).

■ Where the issue to be decided concerns the proper interpretation of a contract, "summary judgment is perforce improper unless the terms of the agreement are 'wholly unambiguous.'" *Wards Co., Inc. v. Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir.1985) (quoting *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). If the meaning of a contract term is not clear, or is reasonably susceptible to more than one interpretation, summary judgment is inappropriate. *Record Club of America, Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1270–71 (2d Cir. November 20, 1989). "[W]here one party opposes summary judgment by propounding a reasonable interpretation of a disputed matter, it may be sufficient to defeat the motion." *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 10 (2d Cir.1983).

■ The purpose of contract interpretation is to give effect to the expressed intent of the parties. *Record Club of America, Inc. v. United Artists Records, supra,* at 1271. "Where parties' intent cannot be conclusively determined as a matter of law

from the terms of the agreement at issue, a factual question arises that must be resolved by a jury." *Enercomp, Inc. v. McCorhill Publishing, Inc.,* 873 F.2d 536, 546 (2d Cir.1989). *See also Schering Corp. v. Home Insurance Co., supra,* 712 F.2d at 10 (summary judgment likely to be inappropriate when the issues concern intent).

Magistrate Francis found that genuine issues of material facts exist concerning the meaning of certain terms of the Contract, precluding summary judgment. He noted that:

> the terms of the contract of insurance at issue here are ambiguous in several areas. The provisions for the timing of premium payments are somewhat cryptic, consisting only of the phrase "payable quarterly" on the binder. No due dates or explication are found in the policy itself. The status of payments for endorsements is also unclear. Such payments are premiums for insurance coverage, and could be considered to be due quarterly, if the language on the binder is construed to refer to all premiums. The endorsements are not included in the $2,700,000 total referred to on the binder, however, and might just as reasonably be treated separately from premium payments. Finally, there are several plausible interpretations of the notice provisions of the policy regarding cancellation for non-payment of premium. The policy's cancellation clause does not specify to whom notice of cancellation is to be given. The provisions of the American Institute Hull Clauses regarding non-payment of premium may or may not apply to cancellation of coverage under the contract.

Report at 14.

■ The Court notes that defendants/third-party plaintiffs' acceptance of the third-quarter premium payment may imply that the Policy was not effectively cancelled, or if cancelled, that such cancellation was rescinded. The matter is not beyond doubt, however, especially because of the ambiguity in the language of the Contract noted by the magistrate and the disputed facts surrounding the practice of

the parties concerning payment of the Contract premium and the endorsements. Plaintiffs' assertion that rules of contract construction should be applied to eliminate any ambiguity on their motion for summary judgment is misguided, as it fails to acknowledge that such principles of contract construction are to be invoked only as a last resort, when other efforts to fathom the parties intent have proved fruitless. *See Record Club of America, Inc. v. United Artists Records, supra,* at 1271. Accordingly, the Court concurs with Magistrate Francis' finding that genuine issues of material fact exist rendering summary judgment inappropriate, and the motions for summary judgment are denied.

## C. *Punitive Damages*

 The magistrate concluded that plaintiffs' claim for punitive damages should be dismissed. McAllister has not objected to this aspect of the Report. To recover punitive damages, a plaintiff must allege more than a mere disagreement over the terms of a contract with a defendant, or the breach of a contract by a defendant. *See Durham Industries, Inc. v. North River Insurance Co.,* 673 F.2d 37, 41 (2d Cir. 1982); *Eccobay Sportswear v. Providence Washington Insurance Co.,* 585 F.Supp. 1343, 1344 (S.D.N.Y.1984). The Court has examined the record and finds no clear error in the magistrate's recommendation that this claim be dismissed. Accordingly, the Court adopts Magistrate Francis' recommendation, and the claim for punitive damages is dismissed.

## D. *Third–Party Complaint*

### 1. Impleader

 Seahawk argues that it was improperly impleaded into this action under Rules 14(a) and 14(c), Fed.R.Civ.P. Primarily, Seahawk contends that Rule 14(c) was inapplicable because this action was not an admiralty action, but an action under the saving to suitors clause, removed to the federal court, which consequently does not contain the necessary statement identifying it as an admiralty action for Rule 14(c) purposes. As set forth at pages 11 to 16

*supra,* the Court disagrees with Seahawk's interpretation of the jurisdictional basis of this lawsuit, and concludes that Rule 14(c) impleader was proper in this admiralty case.

The broad parameters for impleader under Rule 14(c) apply when "a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h)." Rule 9(h) states, in part, that:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rule[ ] 14(c).... If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not.

Because diversity is lacking in this case, plaintiffs' claim is cognizable only in admiralty. Accordingly, the lack of an identifying statement in the complaint is irrelevant to the application of Rule 14(c). Therefore, the magistrate correctly recommended that there is no need to revisit this Court's decision of January 4, 1988, granting the motion to implead Seahawk into this action. The Court concurs, and Seahawk's motion to dismiss the third-party complaint on these grounds is denied.

### 2. Amending the Third–Party Complaint

 Seahawk's remaining argument concerns the First Cause of Action in the third-party complaint which alleges, *inter alia,* that Seahawk, through acts of misrepresentation, misled defendants into believing McAllister had obtained alternative insurance coverage. Seahawk charges that the allegations in this claim fail to meet the standards of particularity required by Rule 9(b). While the allegations in this claim are minimal, Ocean Marine and Gulf Coast have moved pursuant to Rule 15(a) to amend the third-party complaint to add facts already developed by discovery to their claims. Seahawk contends that leave to amend should not be granted because

the motion was unduly delayed and did not have a copy of the proposed amended third-party complaint appended to it. The magistrate recommended that leave to amend the third-party complaint be granted, finding that Seahawk would not be unduly prejudiced by an amendment that only puts existing evidence, of which Seahawk is aware, into the pleadings. Report at 19.

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Amendments are favored as a general matter, *see East River Savings Bank v. Sect. of Housing and Urban Development*, 702 F.Supp. 448, 459 (S.D.N.Y.1988), in order "to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Unless there is a good reason to deny a motion to amend, failure to grant it is an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *United States v. Continental Illinois National Bank and Trust Co.*, 889 F.2d 1248, 1255 (2d Cir.1989). Reasons sufficient to justify the denial of leave to amend include undue delay, bad faith, or undue prejudice to the opposing party. *See Foman v. Davis, supra*, 371 U.S. at 182, 83 S.Ct. at 230. In addition, leave to amend will not be granted when "the proposed change is clearly frivolous or advances a claim or defense that is clearly meritless." *Slavin v. Benson*, 493 F.Supp. 32, 33 (S.D.N.Y.1980).

The Court concurs with Magistrate Francis' finding that Seahawk will not be unduly prejudiced by allowing amendment of the third-party complaint, and adopts his recommendation that leave to file such an amendment be granted. Therefore, Seahawk's motion addressed to the sufficiency of the allegations in the complaint is denied. Ocean Marine and Gulf Coast shall serve and file an amended third-party complaint by January 5, 1990.

E. *Rule 11 Sanctions*

The motions for Rule 11 sanctions are without merit and are denied.

## CONCLUSION

The Court has reviewed the magistrate's Report and has considered *de novo* those portions to which there were timely written objections. For the reasons stated above, the Court adopts, as modified, the magistrate's proposed findings and recommendations. The motions for summary judgment on liability by each party are denied. Plaintiffs' claim for punitive damages is dismissed. The cross-motion filed by Ocean Marine and Gulf Coast to amend the third-party complaint is granted, but the application for sanctions against Seahawk is denied. Seahawk's motion to remand the action to state court, dismiss the third-party complaint, and impose sanctions on Ocean Marine and Gulf Coast is denied. Ocean Marine and Gulf Coast are directed to serve and file the amended third-party complaint by January 5, 1990. The parties are directed to complete any outstanding discovery by March 14, 1990 and file a pre-trial order by April 13, 1990.

It is so ordered.